### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MELANIE JOI FEUERSTEIN, ) | |
| On behalf of herself and others similarly ) | |
| situated, ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | C.A. Number 04-11593-JLT |
| ) | |
| ZWICKER & ASSOCIATES, P.C., ) | |
| PAUL W. ZWICKER, ) | |
| JEFF WIDRONIK, a/k/a "Jeff Woods," ) | |
| BRIAN COYLE, ) | |
| ARTHUR J. TESSIMOND, JR., ) | |
| PHILLIP M. THOMPSON,   and ) | |
| DOES 1 – 5 ) | |

### PROPOSED SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

1.    Plaintiff, Melanie Joi Feuerstein, brings this action asserting individual and class claims arising from unlawful conduct engaged in by Defendants in the course of their consumer debt collection activities.  In her individual claims, plaintiff seeks compensatory, exemplary, and punitive damages due to Defendants' unfair, deceptive, and abusive conduct while attempting to collect on four student loans obtained by Plaintiff from the Massachusetts Educational Financing Authority ("MEFA"), which conduct violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*, ("FDCPA"), the Massachusetts Fair Debt Collection Act and the Massachusetts Consumer Protection Act, G.L. c. 93A.   Plaintiff also asserts a statutory claim under Massachusetts law for invasion of privacy, as well as common law claims for relief.  In her class claims, Plaintiff seeks redress on behalf of persons who were sent collection letters by Zwicker

& Associates, P.C. which unfairly and deceptively aggregated attorney's fees with the balances due, in violation of FDCPA and G.L. c. 93A, and/or were assessed an unlawful attorney's fee.

## Jurisdiction and Venue

2.    This Court's jurisdiction arises under 15 U.S.C. §1692k(d) and 28 U.S.C. § 1337.  This Court has Supplemental Jurisdiction to hear and adjudicate Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367.

3.  Venue is proper in this District pursuant to 28 U.S.C. §1391(b).

## Parties

4.    Plaintiff is a natural person and individual who is domiciled in Franklin, Massachusetts.

5.    Defendant Zwicker & Associates, P.C. ("Zwicker P.C.")  is a Professional Corporation organized under the laws of the Commonwealth of Massachusetts.  At all times relevant to this Complaint it was engaged in the practice of law and maintained a principal business office in Andover, Massachusetts;

6.    To the best of Plaintiff's knowledge and belief, at all times relevant to this Complaint a significant portion of Zwicker's business involved the collection of alleged consumer debts using the mails, telephone  and legal process.

7.    Defendant Paul W. Zwicker ("Zwicker") is an individual who at all times relevant to this Complaint was to the best of Plaintiff's knowledge and belief an Attorney licensed to practice law in Massachusetts and the President and sole shareholder of Zwicker P.C.

8.    Defendant Jeff Widronik, a/k/a "Jeff Woods," is an individual who at all times relevant to this Complaint was to the best of Plaintiff's knowledge and belief employed as a debt collector by Zwicker P.C.

9.      Defendant Brian Coyle ("Coyle") is an individual who at all times relevant to this Complaint was to the best of Plaintiff's knowledge and belief employed by Zwicker P.C. as a debt collector.

10.     Defendant Arthur J. Tessimond, Jr. ("Tessimond") is an individual who at all times relevant to this Complaint was employed by Zwicker P.C. as an Attorney, devoting a substantial portion of his law practice to debt collection activities.

11.     Defendant Phillip M. Thompson ("Thompson") is an individual who at all times relevant to this Complaint was employed by Zwicker P.C. as an attorney, devoting a substantial portion of his law practice to debt collection activities.

12.     The "Doe" defendants 1 – 5 are heretofore unidentified employees and/or agents of Zwicker P.C. who are liable to Plaintiff as set forth herein.

### Factual Allegations

13.     Plaintiff is the "borrower" and William M. Schwank ("Schwank") is the "co-signer" on four (4) individual promissory notes (the "Notes") representing four loans  made to Plaintiff by Key Education Resources , ("Key") , a/k/a the Massachusetts Educational Finance Authority ("MEFA"). Said loans were utilized by Plaintiff in connection with her attendance of Law School at Boston University.  True copies of the Notes are appended hereto as Exhibit A.

14.     The Loans represented debts incurred primarily for personal, family or household purposes.

15.     None of the principal balances of the four loans exceeded $25,000.

16.     Plaintiff attended a financial aid exit interview and graduated from Boston University School of Law in May 2000.

17.     Plaintiff's repayment obligation on the Notes began on or about December, 2000.

18.     Between September and December 1, 2000, MEFA invited Plaintiff to enroll payment of the loans in an Automatic Payment Program with said payments to be automatically withdrawn from her bank account.  In or about November, 2000, Plaintiff contacted MEFA and indicated she wished to enroll in the Automatic Payment Program.  The representative directed Plaintiff to execute the authorization forms and return them  with a voided check and  to send a repayment check in the amount of $243.00 on or before  December 1, 2000.

19.     On or before December 1, 2000, plaintiff executed the forms authorizing automatic payment of each of the four loans from her Fleet Bank checking account  and returned them to MEFA with the  voided check  and a check in the amount of $243.00 to apply to repayment on each of the four loans.   MEFA cashed the repayment check accompanying her completed automatic withdrawal authorization forms and voided check on December 12, 2000.

20.     On or about February 26, 2001, a MEFA representative contacted Schwank by phone in New York.  The representative claimed no payment had ever been made on the 4 loans and that $1,125.72 needed to be paid immediately to bring all four accounts current.  Schwank informed the representative that Plaintiff had arranged for regular payment of the loans by enrolling in the Automatic Payment Program and had made payment of $243.00 in December, 2000.   The representative informed Schwank she had no record of the payment or automatic authorization, and that the processing might take 60 days. Schwank immediately authorized a telephonic payment of $1,125.72 during the conversation and sent MEFA a copy of the Enrollment and bank authorization form as well as a copy of Plaintiff's cancelled check.

21.     Also on or about February 26, 2001, a MEFA representative left a phone message for Plaintiff.  Plaintiff promptly returned the  call and was informed only that the accounts were current.  Nonetheless, a few days later Plaintiff received a letter dated November 22, 2000

forwarded from her previous address notifying her that $99.36 was in arrears on one of her loans. Plaintiff again contacted MEFA and was again advised all loans were current and to ignore the letter.

22.     On or about July 16, 2001, MEFA again contacted both Plaintiff and Schwank and reached Schwank by phone in New York, claiming no payment had ever been made on the 4 loans and that $2,152.26 needed to be paid to bring all four accounts current. Schwank provided the representative with the confirmation number of his earlier payment made in reliance on the February, 2001, MEFA contact along with the transaction and check number of Plaintiff's $243.00 payment and the check number of Plaintiff's enrollment authorization.  Schwank  also authorized a payment of $1,026.54 during the conversation. The MEFA representative promised to investigate and resolve the records and informed Schwank they would contact him again with the results of same.  Plaintiff contacted MEFA by phone at its published 800 number to resolve the matter and sent MEFA a copy of the Enrollment and bank authorization for the second time.

23.     On or about October 15, 2001, MEFA again contacted Schwank by phone in New York, again claiming that no payment had been made on the 4 loans and that $1,368.72 needed to be paid to bring all four accounts current through November 2001. Schwank discussed his provision of the Automatic Payment Authorization and his July 2001 conversation with another MEFA representative.  The representative informed Schwank she could locate no record of the July conversation but admitted the accounts were each current through August 1, 2001 and again promised Schwank she would investigate the records, send him an accounting of all four loans, and notify him if there was an unresolved problem with the Automatic Payment Authorization. During the conversation Schwank again authorized an immediate payment of $1,026.54 to bring the loans current through November, 2001.

24.     MEFA did not send any records or any accounting of the loans to Plaintiff or Schwank. Instead, on or about April 4, 2002, a MEFA "Financial Analyst" contacted Plaintiff by 3 separate mailed communications (which Plaintiff received on or about April, 17, 2002) each entitled "Final Collection Notice" alleging that :

a.     $611.40 was past due and her "next regular monthly payment is 101.90" and demanding Plaintiff remit "the total of $713.30"; and threatening "aggressive litigation" if the 1997 loan account was not brought up to date by April 26, 2002;

b.     $557.94  was past due and her "next regular monthly payment is 92.99" and demanding Plaintiff remit "the total of $ 650.93"; and threatening "aggressive litigation" if the 1998 loan account was not brought up to date by April 26, 2002;

c.     $596.16  was past due and her "next regular monthly payment is 99.36" and demanding Plaintiff remit "the total of $ 695.52"; and threatening "aggressive litigation" if the 1999 loan account was not brought up to date by April 26, 2002.

25.     On or about April 29, 2002, MEFA contacted Schwank by phone in New York informing him that $2,053.08 was immediately due to bring all four loans current through May, 2002. Schwank discussed his previous conversations with the MEFA representatives, and demanded that a copy and accounting of each of the four loans be sent to him.  He also immediately authorized a phone check payment of $2,053.08 and informed the representative he was consulting an attorney unless he received an accounting of all four loans and copies of all related records and communications. The Representative again promised to send copies of the records and accountings to Schwank.  No such documents were ever sent or received.

26.     On or about November 25, 2002, a MEFA representative contacted Schwank to inform him that MEFA had reconciled all four accounts and that the previous representatives had

misapplied the previous payments made. Schwank was also informed that 2 of the accounts were current and payments of $713.30 and $92.99 were required to bring the other accounts current through December, 2002. Schwank authorized electronic payments of these sums over the phone. The representative again promised to send Schwank an accounting and all records related to the four accounts. No records or accounting were ever sent.

27.    On or about December 16, 2002, a MEFA representative again contacted Schwank and informed him all accounts were current except that payments of $101.90 and $92.99 were due for January, 2003. Schwank authorized the electronic payment of these amounts over the phone. The representative again promised to send Schwank an accounting and all records related to the four accounts. Schwank informed the representative that if the accounting and reconciliation was not received by January 15, 2003 he would retain an attorney to assist him in resolving the matter.

28.  At or around this same time, Plaintiff phoned MEFA, again requesting that all accounting records and all other documents relating to the four notes be provided to her and informing MEFA that if said information was not received by January 15, 2003, she would be forced to retain an attorney to address same.

29.    A few days later, Defendants commenced a persistent and continuing course of abusive, unconscionable conduct which was designed to harass, abuse, intimidate; and coerce the Plaintiff and to deprive her of her legal rights, including but not limited to the following:

    a.    On or about December 23, 2002, Jason Fisher ("Fisher") – Plaintiff's "significant other" and a member of Plaintiff's household - checked their voicemail when he returned home at approximately 8:00 p.m. Fisher heard a voicemail message directed at Plaintiff stating: "Ms. Feuerstein, this is Jeff Woods, it is imperative that you call me today at 1-800-370-2251

extension 3713."  The message did not state that it related to the attempted collection of a debt or that any information obtained would be used for that purpose.  On information and belief, the person who identified himself as "Jeff Woods" in this message and in subsequent contacts with plaintiff and other persons regarding these debts, as set forth below, was the defendant Jeff Widronik.

  b.     A few moments later Fisher's phone line rang and the anonymous call reject indicated that "Jeff" was calling; assuming the call was an emergency related to the voice mail, Plaintiff accepted the call.   A male caller identified himself as "Jeff Woods" and stated that he was an attorney and family friend of Schwank's.  Woods falsely told Plaintiff that there had been a bad accident involving "Bill's" mother and that "Woods" immediately needed Bill's cellphone number.  Plaintiff was suspicious as the "caller ID" function on Plaintiff's phone indicated "Zwicker & Associates" and a Massachusetts area code; furthermore, Woods said the accident occurred in Florida, while Plaintiff knew Bill's mother lived in Vermont.

  c.     Plaintiff informed "Woods'" of her suspicions, requested Woods' BBO number and informed "Woods" that if the information turned out to be inaccurate, she would file complaints with the Massachusetts Attorney General and Massachusetts Board of Bar Overseers. "Woods" told Plaintiff to "go ahead," and said she should represent herself "when we arrest you for the $50,000 you owe us."  "Woods" then screamed obscenities at Plaintiff. Plaintiff told Woods the phone number he was calling on belonged to Jason Fisher, to cease communicating with her at that number and outside of a writing, and that all communications regarding her student loans should go to Schwank's Attorney in New York.

  d.     "Woods" told Plaintiff to "let him [sic] know when she felt like paying for her education," screamed more obscenities, told Plaintiff "we are going to put in the computer that

you were not home and we'll call again tomorrow night," and hung up abruptly.  "Woods" called

back again several times that night and the following night, Christmas Eve.  Each time the phone

was answered by Fisher.  During each of these calls "Woods" demanded Fisher pay "Woods"

$50,000, called Fisher obscene names and then abruptly hung up.

      e.      From December 2002 through January, 2003, "Woods" and an individual

identifying himself on occasion as "Brian Coyle," "Supervisor of Jeff Woods," "an Attorney," or

"Collections Manager" at Zwicker & Associates" called Plaintiff on Fisher's phone number on a

nightly basis, often several times per night.

      f.      Each time "Woods" or Coyle reached Plaintiff or Fisher, "Woods" and Coyle

screamed at them, threatened to have Plaintiff and Schwank arrested, and yelled obscenities.

Each time Coyle and "Woods" called, Plaintiff told them to cease calling her and to direct all

contact regarding the notes to Schwank's attorney in New York.   Each time "Woods" or Coyle

reached Fisher, "Woods" consistently identified himself as an attorney, discussed the matter with

Fisher, and demanded  $50,000  which he claimed Schwank and Plaintiff owed.

      g.      On February 11, 2003, Defendants sent Schwank a collection letter

misrepresenting the status, nature, and amount owed on Plaintiff's loans.

      h.      On or about February 12, 2003, "Woods" called Plaintiff's home and spoke with

Fisher.  "Woods" again identified himself as an attorney, this time claiming he was employed

with Key Bank (a servicer of the MEFA loans).  "Woods" further stated to Fisher that he was

looking for  Plaintiff and Schwank because "they owe us $50,000 on a business matter," told

Fisher that Schwank's employees were covering up for Schwank by claiming he was not at work,

and asked Fisher for Schwank's cellphone number.  When Fisher again told "Woods" to cease

calling his home, that the Plaintiff was ill, and that he should not call any more, "Woods" stated,

"You better pay us or we'll come arrest you both." "Woods" also stated " You owe us $50,000, you've never made any payments on your student loans, we'll take your house in Florida and send a Marshall to arrest you and [Plaintiff] if you don't pay." "Woods" also stated "we will enter that you were not home and call tomorrow night."

       i.      On or about February 13, 2003, "Woods" again called Plaintiff to demand payment, eventually screaming obscenities and hanging up, as usual. A few minutes later, a person identifying himself as "Brian" and an "attorney and collections manager at Zwicker & Associates " called Plaintiff on Fisher's number. "Brian" stated to Fisher that he was Woods' supervisor, claimed that no payments had ever been made on Plaintiff's student loans, and that he didn't have to contact any attorneys for Plaintiff or Schwank or provide any proof of the debt to Plaintiff. "Brian" also stated, falsely, that he had just spoken to Schwank and that Schwank had said the Plaintiff was faking illness. "Brian" further stated that Plaintiff owed $42,000 and that he was sending a Marshall to arrest Schwank at his employer's office if Plaintiff did not pay.

       j.      On or about February 19, 2003, "Brian" called again and again identified himself as "Attorney Woods' manager." "Brian" stated that he had just talked to Schwank and that Schwank said Plaintiff is not ill. "Brian" told Fisher there was nothing wrong with Plaintiff, that "Your girlfriend is a [expletive] liar" and threatened to sue Plaintiff and get a default judgment. He also said "we are charging you $6,000 to keep this up; we'll do what we want." He also stated he would not send Plaintiff any records as she had requested, used a stream of expletives, and hung up.

       k.      A few days later Plaintiff's household received a call from the "anonymous" call reject system notifying them a person was calling identifying himself as "Jeff" who is a "friend of Bill's [Schwank]." "Jeff" asked for Schwank's cellphone number and the name of a hotel

where he might be staying. "Jeff" told Plaintiff that if she didn't give the information to him he would attach Schwank's paycheck and arrest him.

l.    On February 26, 2003, Zwicker P.C. sent Plaintiff four collection letters purportedly signed by Tessimond, each falsely dated February 22, 2003, to an address where said Defendants knew Plaintiff no longer resided, each misrepresenting the status and amount of Plaintiff's student loans, each failing to include an Accounting of how the alleged balances were calculated, and each seeking an undisclosed attorney's fee based on a percentage of the alleged debt. True copies of the letters and a representative envelope are appended hereto as Exhibit B.

m.    On information and belief, the aforementioned letters are computer-generated canned form letters containing pre-printed paragraphs routinely utilized by Zwicker P.C. Neither the letters nor Plaintiff's file was actually reviewed by Tessimond prior to same being mailed to Plaintiff. If Tessimond had actually reviewed the letters and Plaintiff's file, blatant errors would have been discovered and corrected.

n.    On March 13, 2003, "Woods" again called Plaintiff at Fisher's residence, where Fisher answered the phone. "Woods" told Fisher he was a "friend" of Plaintiff's, then screamed obscenities and hung up. "Brian" called back. Fisher told him again to stop calling and harassing them, as Plaintiff was recuperating from surgery. When Fisher said they would be filing a complaint with the BBO, "Brian" said he didn't care, that "you" owe $45,000, that they were being charged $3,000 for calling and harassing them, and that he would have Plaintiff's law license revoked. "Brian" then screamed obscenities and hung up.

o.    On March 20, 2003, and again in spite of being told to refer all contact regarding Plaintiff's loans to Schwank's attorney, "Woods" again contacted Schwank at his place of employment. Schwank informed "Woods" that if "Woods" contacted him again Schwank would

seek criminal charges against Woods for criminal harassment. "Woods" screamed expletives at Schwank and hung up.

p.    On March 25, 2003, Schwank's attorney - Michael J. DeZorett - contacted "Woods" by phone. "Woods" falsely stated he was an attorney and refused to speak with DeZorett. DeZorett immediately contacted "Woods" in writing, demanding that Woods cease contacting Schwank at his work or directly and that "Woods" provide DeZorett any and all relevant documents concerning the MEFA accounts. DeZorett further stated that he would discuss and attempt to resolve the matter upon receipt of these documents. Defendants' only response to this letter consisted of a 15-page fax containing incomprehensible, unidentifiable, and incomplete portions of the Notes themselves, with no information about Plaintiff's or Schwank's accounts histories or payment records.

q.    The next day, March 26, 2003, Zwicker P.C. again sent Plaintiff four pre-printed canned "form" collection letters to her old address misrepresenting the status and amounts of Plaintiff's loans and purportedly signed by Tessimond. On information and belief, neither the letters nor Plaintiff's file was actually reviewed by Tessimond prior to same being mailed to Plaintiff. If Tessimond had actually reviewed the letters and Plaintiff's file, blatant errors would have been discovered and corrected. These letters misrepresented the status and amount of Plaintiff's student loans, each failed to include an Accounting of how the alleged balances were calculated, and each sought an undisclosed attorney's fee based on a percentage of the alleged debt. True copies of these letters and envelopes are attached hereto as Exhibit C.

r.    At around this time "Woods" also began phoning DeZorett's office demanding to speak with him. "Woods" verbally harassed Dezorett's assistant, accused her of misrepresenting DeZorett's whereabouts, and demanded DeZorett's cellphone number. On one of these

occasions, "Woods" told DeZorett's assistant that if she did not give him DeZorett's cellphone number, "Woods" would contact Schwank directly at work and have him arrested. In tears, DeZorett's assistant disclosed the cellphone number. Woods then repeatedly called DeZorett's cellphone while DeZorette was in a closing and yelled obscenities at him so loudly that other persons in the room could hear.

s.    DeZorett excused himself from the proceeding and asked "Woods" if he bothered to review an accounting of the MEFA records. "Woods" stated he had provided DeZorett with same. DeZorett told "Woods" that if he continued his outrageous conduct he would report him to the New York Bar disciplinary authorities. DeZorett also asked if he could speak with Attorney Zwicker or another lawyer in his office. "Woods" refused, called DeZorett names, and stated "I've read all our notes concerning the loans; your [expletive] Client owes us $50,000," and hung up.

t.    Despite the frequent oral and written repeated requests made by Plaintiff, Schwank, and DeZorett for an accounting of the four loans and alleged amounts due under the Notes, neither MEFA nor Zwicker P.C. has ever provided same.

u.    For the next several months various employees of Zwicker P.C. made numerous calls to Plaintiff at Fisher's number and at Fisher's residence, and directly to Schwank at his home, despite being repeatedly told to refer all contacts concerning the notes to Schwank's attorney. Said employees would routinely make said calls from several different numbers (including on Saturdays and Sundays) several times a day and let the phone ring until the voice mail picked up, but left no messages.

v.    In early July, 2003, Plaintiff was pregnant and not feeling well. A female employee of Zwicker P.C. called Fisher's number from an unidentified number and left a

message under an assumed name, telling Fisher to call back, saying it was an "emergency" concerning Plaintiff.  Fearing that Plaintiff was injured, Fisher returned the call.  When the employee refused to identify herself and asked Fisher intrusive questions about Plaintiff and Fisher's relationship, Fisher told the employee that Plaintiff was pregnant and feeling ill and had been advised to avoid stress.  He also informed the employee that he knew who they were and demanded they  not call anymore and refer all contact to Schwank's attorney.   Zwicker P.C. employees nonetheless continued calling on a daily and nightly basis.  On several of these occasions the caller said a Marshall was being sent out to arrest Fisher and Plaintiff.

w.    On July 14, 2003, Plaintiff began bleeding; she suffered a miscarriage and had related surgery.  When Coyle next called, he again began asking Fisher personal questions about his relationship with Plaintiff.  Fisher informed him of Plaintiff's miscarriage and surgical recuperation and asked if he was happy about the results of their harassment.  He also demanded that Zwicker P.C. and its employees cease contacting his number and informed them he intended to file a police report with the Franklin Police Department for the annoying phone calls and for criminal harassment.  Fisher also stated that he would retain his own attorney and obtain an injunction if they continued to contact Plaintiff, Fisher or Fisher's number.   Defendant Coyle claimed he "just spoke to Bill, that Bill said Plaintiff was not ill," and that he would call again tomorrow.  Coyle also told Jason he had no business being anyone's father.  He also asked Fisher questions directed to finding out whether someone in Plaintiff's or Fisher's family might pay $50,000 to satisfy Plaintiff's loans.  Coyle further told Fisher he better get a loan and pay them $50,000 or they would have Plaintiff's law license revoked, have Plaintiff arrested, and take Fisher and Plaintiff's house.  Fisher informed Coyle he was calling the Franklin Police on his other line and Coyle then screamed obscenities at Fisher before finally hanging up.

x.     Zwicker P.C. next sent Plaintiff 8 additional "form" collection letters, falsely dated July 16, 2003, two for each of the student loans, each letter falsely representing the status and amounts due on Plaintiff's loans, each failing to include an Accounting of how the alleged balances were calculated, and each seeking an undisclosed attorney's fee based on a percentage of the alleged debt.    Each was addressed to Plaintiff's old address where Defendants knew Plaintiff no longer resided.    The letters were post-marked July 18, 2003 and were forwarded by the Postal Service to Plaintiff's residence on July 22, 2003.    The letters were purportedly signed by Tessimond.    On information and belief, neither the letters nor Plaintiff's file was actually reviewed by Tessimond prior to same being mailed to Plaintiff.    If Tessimond had actually reviewed the letters and Plaintiff's file, blatant errors would have been discovered and corrected. True copies of said letters and envelopes are attached hereto as Exhibit D.

y.     On or about October 23, 2003, Tessimond and Zwicker P.C. filed a specious lawsuit on behalf of MEFA against Plaintiff in Middlesex Superior Court falsely alleging that Plaintiff was delinquent on her MEFA loans and had defaulted on the 4 promissory notes.

z.     Said defendants intentionally filed said lawsuit in Middlesex County despite having actual knowledge or reason to know that venue in said county was improper.

aa.     Said defendants intentionally also had the summons (without a copy of the complaint) for said lawsuit served at an address which they knew or had reason to know was not the Plaintiff's residence.    Defendants took such action for the specific purpose of depriving Plaintiff of notice of the lawsuit so plaintiff would not answer the complaint and a default judgment could be illegally obtained against her .

bb.     On or about November 4, 2003, Plaintiff received a voicemail left at Fisher's number from an unidentified individual stating it was an imperative "Attorney Feuerstein" return

the call immediately. A few minutes later, at 8:40 p.m., Plaintiff received a call on Fisher's number from a "Barry Smith" of Zwicker and Associates. "Barry" falsely represented he was an attorney with Zwicker and Key Bank, that no payments had been made on Plaintiff's MEFA loans, and that Plaintiff owed the sum of $48,000. When Plaintiff informed him that she possessed her cancelled checks; Defendants had consistently refused to provide records of her account, "Barry" said that the only record Plaintiff would be getting is a summons, which he claimed had already been served on Plaintiff. Plaintiff told him she hadn't received anything, and that Zwicker and MEFA both had her current address so that if it went to her old address, that would not be effective service. Plaintiff requested "Barry's" BBO number, at which point "Barry" abruptly hung up.

cc.    Plaintiff obtained a copy of the Complaint from the Middlesex Superior Court, retained Counsel, and moved to dismiss. On or about December 11, 2003, the lawsuit was dismissed by the Middlesex Superior Court for improper venue.

dd.    On or about March 1, 2004, Zwicker P.C. sent an additional 4 canned "form" collection letters to Plaintiff's attorney, one for each of the four student loans. Each letter was purportedly signed by defendant Thompson. Each letter falsely represented the status and amounts due on Plaintiff's loans, each failed to include an Accounting of how the alleged balances were calculated, and each sought an undisclosed attorney's fee based on a percentage of the alleged debt. On information and belief, neither the letters nor Plaintiff's file was actually reviewed by Thompson prior to same being mailed to Plaintiff. If Thompson had actually reviewed the letters and Plaintiff's file, blatant errors would have been discovered and corrected. True copies of said letters are attached hereto as Exhibit E.

ee.    On or about March 29, 2004, Plaintiff's attorney responded in writing to the March 1, 2004 letters, disputing the validity of the debts.   True copies of said responses are attached hereto as Exhibit F.   Neither Zwicker P.C. nor Thompson provided any documentation or otherwise responded to said letters.

ff.    On April 21, 2004, Plaintiff hand-delivered to Zwicker, P.C. by Constable a demand for relief pursuant to G.L. c. 93A, section 9, which set forth the above-described unlawful conduct of defendants and a demand for monetary relief.    A true copy of said demand for relief (without attachments) is appended hereto as Exhibit G.   A true copy of the Constable's delivery receipt is appended hereto as Exhibit H.

30.    Throughout the above time period from November, 2000 continuing through the present, payments were made in good faith on each of Plaintiff's student loans.  However, despite said payments, Defendants continued to claim, orally and in writing, that no payment was ever made on the loans and said were delinquent or in default.

31.    On multiple occasions from December, 2002 to date, Plaintiff and Schwank informed Defendants that they contested the claims that the loans were delinquent or in default, and requested documentation – such as a payment record or account history – so that any problems could be addressed and, if necessary, corrected.  Defendants consistently refused and never provided any of the requested documentation.

32.    As direct and proximate results of the Defendants' conduct as set forth herein, Plaintiff suffered a deprivation of statutory rights, unreasonable and substantial interference with her privacy, severe emotional distress, mental anguish, and monetary loss.

33.    The unlawful conduct of Defendants Zwicker, Widronik a/k/a "Woods," Coyle, Tessimond, and Thompson, as set forth above was carried out in the course of, and was within

the scope of, their employment with Zwicker P.C., for which Zwicker P.C. is jointly and severally liable.

34.    The unlawful conduct of Defendants Widronik a/k/a "Woods," Coyle, Tessimond, Thompson, and Zwicker P.C. as set forth above, and the resulting harm suffered by Plaintiff, were directly and proximately caused by the negligence of Zwicker in failing to use reasonable care in hiring, training, and supervising employees of Zwicker P.C. with respect to debt collection activities, and the negligence of Zwicker in failing to use reasonable care in formulating and implementing policies and procedures designed to avoid violating the rights of debtors and alleged debtors, such as the Plaintiff herein.

## INDIVIDUAL CLAIMS FOR RELIEF

### COUNT I

### VIOLATIONS OF  THE FEDERAL FAIR DEBT COLLECTION ACT

35.    The allegations of paragraphs 1 – 34  are realleged and incorporated herein as if fully set forth.

36.    At all times relevant to this complaint Plaintiff was a "consumer" within the meaning of 15 U.S.C.§1692a(3).

37.    The loans which are the subject of this lawsuit constitute "debts" within the meaning of 15 U.S.C. §1692a(5).

38.    At all times relevant to this complaint defendants were "debt collectors" within the meaning of 15 U.S.C. § 1692a(6), to wit, they used instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, and they regularly collect or attempt to collect debts owed or due or asserted to be owed or due another.

39.    Defendants violated the Fair Debt Collection Act in the following respects:

(a)    Defendants Widronik ("Woods") and Coyle violated 15 U.S.C. §1692(d) by engaging in conduct the natural consequence of which was to harass, oppress, embarrass, demean or abuse various persons in connection with the collection of the Notes. Specifically, defendants employed illegal means, including but not limited to: the threat of arrest, the use of obscene and profane language, and making repeated telephone calls at inconvenient hours.

(b)    Defendants Widronik ("Woods") and Coyle violated 15 U.S.C.§1692e(4) and (5) by threatening to arrest the Plaintiff even though such action would not have been lawful and defendants did not intend to take such action.

(c)    Defendant Widronik ("Woods") and Coyle violated 15 U.S.C.§1692e by falsely representing that Widronik ("Woods") was an attorney and licensed to practice law in the Commonwealth of Massachusetts;

(d)    Defendants Widronik ("Woods") and Coyle violated 15 U.S.C. §1692c(b) by communicating with third parties regarding the alleged debt without prior consent of Plaintiff given directly to defendants or as otherwise permitted by law.

(e)    Defendants Widronik ("Woods"), Coyle, Tessimond, and Thompson violated 15 U.S.C. §1692e(2)(B) and §1692f(1) by falsely representing the compensation which may be lawfully received by defendants for the collection of the debt, and attempting to collect same from Plaintiff, including *inter alia* computing said compensation on the basis of a contingency fee not authorized by plaintiff;

(f)  Defendants Widronik ("Woods"), Coyle, Tessimond, and Thompson violated 15 U.S.C. § 1692e(2) by falsely representing the character, amount, or legal status of the debts;

(g)  Defendants Widronik ("Woods"), Coyle, Tessimond, and Thompson violated 15 U.S.C. §1692f  by failing and refusing to provide Plaintiff with information she requested to determine the status of the debt and accounts with MEFA, including but not limited to accounting and payment records.

(h)  Defendants Tessimond and Thompson violated 15 U.S.C. §1692e(3) and (10) by forwarding correspondence to Plaintiff which suggested it was from an attorney when, upon information and belief, no attorney actually reviewed Plaintiff's file or records related to any of the four loans, or the correspondence itself, prior to sending the correspondence.

(i)  Defendant Tessimond violated 15 U.S.C. § 1692i(a)(2) by bringing legal action against Plaintiff in an improper judicial district.

(j)  Defendant Tessimond violated 15 U.S.C. § 1692f by bringing legal action against Plaintiff in an inconvenient judicial district and by serving a summons upon her at an address which defendants knew, or should have known, was not Plaintiff's residence and had not been Plaintiff's residence for some time.

(k)  Defendants Widronik ("Woods") and Coyle violated 15 U.S.C. §1692f by continuing to contact Plaintiff, the co-signer and third parties after the Defendants had repeatedly been informed that Plaintiff and Co-Signer were represented by counsel and that any and all contact regarding the loans were to go through counsel.

20

(l)   Defendant Widronik ("Woods") violated 15 U.S.C. §1692g by failing to send the Plaintiff a written notice containing the information required by 15 U.S.C. § 1692g within five days after the initial oral communication, which occurred December 2002.

(m)  Defendant Widronik ("Woods") violated 15 U.S.C. §1692e(11) by failing to indicate in the initial oral communication with the Plaintiff that the Defendants were attempting to collect a debt and that any information obtained would be obtained for that purpose.

(n)  Defendant Widronik ("Woods") violated 15 U.S.C. §1692d(6) by placing telephone calls to Plaintiff without meaning disclosure of his identity.

Wherefore, Plaintiff prays for judgment: (i) awarding actual damages; (ii) awarding statutory damages of $1,000 per violation; (iii) awarding interest, costs, and reasonable attorney's fees;  (iv) holding Zwicker and Zwicker P.C. jointly and severally liable to plaintiff for all amounts awarded; and (v) awarding such further relief as shall be just and proper.

## COUNT II

## INVASION OF PRIVACY (G.L. c. 214 § 1B)

40.  Plaintiff realleges and incorporates each and every allegation of Paragraphs 1- 39 as if fully set forth herein.

41.  Defendants' repeated, unwarranted, and intrusive inquiries into Plaintiff's medical condition and personal relationships, all as described above, constituted unreasonable , substantial  and serious interferences with Plaintiff's privacy and solitude in violation of G.L. c. 214, s. 1B.

Wherefore, Plaintiff prays for judgment: (i) awarding monetary damages;   (ii) awarding pre-judgment interest, costs, and reasonable attorney's fees; (iii) holding Zwicker and Zwicker

P.C. jointly and severally liable to plaintiff for all amounts awarded; and (iv) awarding such further relief as shall be just and proper.

**COUNT III**

**<u>ABUSE OF PROCESS</u>**

42. Plaintiff realleges and incorporates each and every allegation at Paragraphs 1 - 41 as if fully set forth herein.

43. The conduct of Tessimond and Zwicker P.C. in bringing suit against Plaintiff, which suit falsely alleged indebtedness on the part of Plaintiff, which sought recovery for "churned" legal fees, and which was brought in an improper judicial district and without actual notice to plaintiff, constituted an abuse of process.

44. Said suit was brought maliciously, without foundation, and with the ulterior and unlawful intent of obtaining a default judgment against plaintiff, thus depriving Plaintiff from being able to assert her rights and defend same.

Wherefore, Plaintiff prays for judgment: (i) awarding monetary damages against Tessimond and Zwicker P.C., jointly and severally; (ii) awarding interest, costs, and reasonable attorney's fees; (iii) holding Zwicker jointly and severally liable to plaintiff for all amounts awarded; and (iv) awarding such further relief as shall be just and proper.

**COUNT IV**

**<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>**

45. Plaintiff realleges and incorporates each and every allegation set forth in paragraphs 1 – 44, above.

46. Defendants have engaged in an extreme and outrageous course of behavior; beyond all possible bounds of decency and utterly intolerable in a civilized society.

47.    Defendants intended to inflict and cause, and knew or should have known that their conduct would cause, the Plaintiff to suffer severe emotional distress.  Defendants intended, knew, or should have known, that severe emotional distress was the likely result of their conduct.

48.    Defendants' intentional and reckless conduct proximately caused Plaintiff to suffer severe emotional distress of a nature no reasonable person could be expected to endure, including headaches, weeping; depression, anxiety, inability to concentrate, and other harm.

Wherefore, Plaintiff prays for judgment: (i) awarding compensatory damages; (ii) awarding interest and costs; (iii) holding Zwicker and Zwicker P.C. jointly and severally liable to plaintiff for all amounts awarded; and (iv) awarding such further relief as shall be just and proper.

## COUNT V

## VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT, G.L. c. 93A, §2

49.    The allegations of paragraphs 1 – 48 are re-alleged and incorporated herein as if fully set forth.

50.    At all times relevant to this Complaint, defendants were engaged in trade or commerce.

51.    The conduct of Defendants as alleged above constituted unfair and/or deceptive acts and practices in violation of G.L. c. 93A, section 2.    In addition, said conduct constituted *per se* violations of said section 2 by violating the following statutes and regulations:

(a) G.L. c. 93, section 49(c), by communicating with Plaintiff in a manner as to harass or embarrass her, including but not limited to communication at unreasonable hours,

with unreasonable frequency, by threats of violence, by use of offensive language, and by threats of actions which Defendants in the usual course of business do not take;

(b)  940 CMR 7.04, by threatening Ms. Feuerstein with arrest, using obscene and profane language, and by exceeding two calls in seven days to the plaintiff's residence;

(c)  940 CMR 7.05 by implying the fact of a debt to persons residing in Ms. Feuerstein's household, by using obscene and profane language to persons residing in her household, and by contacting persons residing in her household with unreasonable frequency;

(d)  940 CMR 7.07, by misrepresenting the character, extent, or amount of the debt, by misrepresenting that the caller was an attorney, and by misrepresenting that the debt could be increased by attorney's fees which could not be legally added to the alleged debt.

(e)  various provisions of the Fair Debt Collection Practices Act, 18 U.S.C. 1692 et seq., as further set forth in Count I, above.

52.    Said unfair and/or deceptive conduct was willful and/or wanton in nature.

53.    On April 21, 2004, Plaintiff hand-delivered to Zwicker, P.C. by Constable a demand for relief pursuant to G.L. c. 93A, section 9, which reasonably described the unlawful acts complained of enumerated herein.   A true copy of said demand for relief is appended hereto as Exhibit G.   A true copy of the Constable's delivery receipt is appended hereto as Exhibit H.

54.    Zwicker P.C. did not make a written tender of settlement within the thirty (30) day period specified by G.L. c. 93A, section 9.   Instead, on May 24, 2004, said Defendant forwarded a letter to Plaintiff's counsel setting forth a late, and unreasonable, settlement offer.  A true copy of said letter is appended hereto as Exhibit I.

55.    Zwicker P.C.'s failure to make a reasonable written tender of settlement within 30 days of receipt of Plaintiff's demand was in bad faith with knowledge or reason to know that the acts and practices complained of violated G.L. c. 93A, section 2.

        Wherefore, Plaintiff prays for judgment: (i) awarding  her damages against Zwicker P.C. for all the unfair and deceptive conduct alleged herein, or $25.00 for each violation of section 2, whichever is greater; (ii) doubling or trebling said damages pursuant to G.L. c. 93A, section 9; (iii) awarding interest, costs, and reasonable attorney's fees; (iv) holding Zwicker jointly and severally liable to plaintiff for all amounts awarded against Zwicker P.C.; and (v) awarding such further relief as shall be just and proper.

## CLASS ACTION CLAIMS

## COUNT VI

## VIOLATIONS OF THE FAIR DEBT COLLECTION ACT – UNLAWFUL NON-DISCLOSURE OF ATTORNEY'S FEES

56.  The allegations of paragraphs 1 – 55 are re-alleged and incorporated herein as if fully set forth.

57.  Plaintiff brings Count VI of this Complaint on behalf of herself and a class of persons similarly situated.  The class consists of persons who were sent any collection letters by Zwicker, P.C. in the one-year period immediately preceding the filing of this Complaint in which the

balance alleged to be due included, but did not disclose, an amount representing attorney's fees, and which were not returned to sender.  Excluded from the class are persons who are or were employees, officers, or directors of Zwicker P.C.

58.    The letters dated July 16, 2003 and March 1, 2004 sent by Zwicker P.C. to Plaintiff included as part of the stated balances due thousands of dollars in attorney's fees, yet the letters did not itemize or otherwise disclose the fact that attorney's fees were so included and being demanded.  The letters thus falsely represented the character, amount, or legal status of the debts in violation of 15 U.S.C. §1692e(2).

59.    On information and belief, Zwicker P.C. employs standard billing and dunning practices with respect to collection activity which it undertakes on MEFA notes and other accounts, and has employed said practices in connection with hundreds, if not thousands, of accounts. Accordingly, the members of the class are sufficiently numerous such that joinder is impracticable.

60.    There are issues of law and fact common to class members, which issues predominate over any individual questions, and a class action is a superior method of resolving the controversy.  Common issues include the billing and dunning practices of Zwicker P.C. with respect to MEFA loans and other accounts, specifically, the form and content of defendant's standard collection letters, and whether such practices violate the Fair Debt Collection Act as set forth above.

61.    Prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendant.

62.     Zwicker P.C. has acted on grounds generally applicable to the class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole.

63.     The Plaintiff's claim is typical of – indeed, is identical to - the claims of class members. Plaintiff has been harmed in the same manner as class members as a result of Defendant's conduct, and seeks similar relief.

64.     Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff is committed to a complete and thorough resolution of this matter, and as an attorney feels a special obligation to obtain redress for those who have been harmed by Defendant's unlawful collection practices.   She has carefully selected counsel experienced in consumer and class action litigation.  Neither Plaintiff nor counsel is aware of any factor which would cause either not to diligently pursue this action.

Wherefore, Plaintiff prays for a judgment: (a) enjoining Zwicker P.C. from sending letters to debtors where the balance due includes amounts allegedly due for attorney's fees without disclosing such fact or the amounts, or from making other forms of demand where attorney's fees are included but not disclosed; (b) ordering Zwicker P.C. to notify all class members of the amount of attorney's fees, if any, included in the balances of all previously-sent collection letters;   (c) awarding Plaintiff and class members their actual damages and the maximum amount of statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(B), against Zwicker P.C. and Zwicker, jointly and severally; (d) awarding costs and reasonable counsel fees pursuant to 15 U.S.C. §1692k(a)(3);  (e) awarding such further relief as shall be just and proper.

## COUNT VII

## <u>VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT –NON-DISCLOSURE OF ATTORNEY'S FEES</u>

65.    The allegations of paragraphs 1 – 64 are re-alleged and incorporated herein as if fully set forth.

66.    Plaintiff brings Count VII of this Complaint on behalf of herself and a class of persons similarly situated.  The class consists of persons who were sent any collection letter by Zwicker, P.C. in the four-year period immediately preceding the filing of this Complaint in which the balance alleged to be due included, but did not disclose, an amount representing attorney's fees, and which was not returned to sender.  Excluded from the class are persons who are or were employees, officers, or directors of Zwicker P.C.

67.  The conduct of Zwicker P.C. of including amounts allegedly due for attorney's fees in the total "balance" due without disclosing that such fees were so included was unfair and/or deceptive in that it falsely represented the character, amount, or legal status of the debts.

68.    Said unfair and/or deceptive conduct was willful and/or wanton in nature.

69.    On April 21, 2004, Plaintiff hand-delivered to Zwicker, P.C. by Constable a demand for relief pursuant to G.L. c. 93A, section 9, which reasonably described the unlawful acts complained of.   A true copy of said demand for relief is appended hereto as Exhibit G.  A true copy of the Constable's delivery receipt is appended hereto as Exhibit H.

70.    Zwicker P.C. did not make a written tender of settlement within the thirty (30) day period specified by G.L. c. 93A, section 9.   Instead, on May 24, 2004, said Defendant forwarded a

letter to Plaintiff's counsel setting forth a late, and unreasonable, settlement offer.  A true copy of said letter is appended hereto as Exhibit I.

71.    Zwicker P.C.'s failure to make a reasonable written tender of settlement within 30 days of receipt of Plaintiff's demand was in bad faith with knowledge or reason to know that the acts and practices complained of violated G.L. c. 93A, section 2.

72.    On information and belief, Zwicker P.C. employs standard billing and dunning practices with respect to collection activity which it undertakes on MEFA notes and other accounts, and has employed said practices in connection with hundreds, if not thousands, of accounts. Accordingly, the members of the class are sufficiently numerous such that joinder is impracticable.

73.    There are issues of law and fact common to class members, which issues predominate over any individual questions, and a class action is a superior method of resolving the controversy.   Common issues include the billing and dunning practices of Zwicker P.C., the form and content of defendant's standard collection letters, and whether such practices violate the Massachusetts Consumer Protection Act as set forth above.

74.    Prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendant.

75.    Defendant has acted on grounds generally applicable to the class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole.

76.     The Plaintiff's claim is typical of – indeed, is identical to - the claims of class members. Plaintiff has been harmed in the same manner as class members as a result of Defendant's conduct, and seeks similar relief.

77.     Plaintiff will fairly and adequately protect the interests of the class.   Plaintiff is committed to a complete and thorough resolution of this matter, and as an attorney feels a special obligation to obtain redress for those who have been harmed by Defendant's unlawful collection practices.   She has carefully selected counsel experienced in consumer and class action litigation.  Neither Plaintiff nor counsel is aware of any factor which would cause either not to diligently pursue this action.

Wherefore, Plaintiff prays for a judgment: (a) enjoining Zwicker P.C. from sending letters to debtors where the balance includes amounts allegedly due for attorney's fees without disclosing such fact or the amounts, or making other forms of demand where attorney's fees are included but not disclosed; (b) ordering Zwicker, P.C. to notify all class members of the amount of attorney's fees, if any, included in the balances of all previously-sent collection letters; (c) awarding Plaintiff and class members their actual damages or $25.00 per violation, whichever is greater, against Zwicker P.C. and Zwicker, jointly and severally; (d) doubling or trebling the amount of said damages awarded, pursuant to G.L. c. 93A, section 9; (e) awarding costs and reasonable counsel fees pursuant to G.L. c. 93A, section 9; (f) awarding such further relief as shall be just and proper.

## COUNT VIII

### VIOLATIONS OF THE FAIR DEBT COLLECTION ACT – UNLAWFULLY ASSESSING AND ATTEMPTING TO COLLECT ATTORNEY'S FEES

78.  The allegations of paragraphs 1 – 77 are re-alleged and incorporated herein as if fully set forth.

79.  Plaintiff brings Count VII of this Complaint on behalf of herself and a class of persons similarly situated.  The class consists of all persons who were sent any collection letter by Zwicker, P.C. in the one-year period immediately preceding the filing of this Complaint which sought to collect an attorney's fee (whether designated as such or not) based on a percentage of the debt where the agreement creating the debt did not specifically provide for same, and which was not returned to sender.  Excluded from the class are persons who are or were employees, officers, or directors of Zwicker P.C.

80.     The letters dated July 16, 2003 and March 1, 2004 sent by Zwicker P.C. to Plaintiff

included, as part of the stated balances, thousands of dollars allegedly due for attorney's fees based on a percentage of the balance due.  The Notes signed by plaintiff did not authorize the holder to charge  a percentage-based fee in connection with the collection of amounts due under the Notes.  The letters thereby violated 15 U.S.C. §1692e(2)(B) by falsely representing the amount which could be lawfully received as compensation for collecting the debt, and 15 U.S.C. §1692(f)(1) by attempting to collect attorney's fees which were not expressly authorized by the agreement creating the debt or permitted by law.

81.     Zwicker, P.C. holds itself out as one of the country's largest collection firms and, on information and belief (and according to its website), it frequently employs a contingency-fee

arrangement in the collection of consumer debts, many or most of which are believed to be based on agreements (such as credit card agreements) that do not specifically provide for or authorize the debtor to be charged a contingency fee. Accordingly, the members of the class are sufficiently numerous such that joinder is impracticable.

82.    There are issues of law and fact common to class members, which issues predominate over any individual questions, and a class action is a superior method of resolving the controversy. Common issues include Zwicker P.C.'s practice of collecting and attempting to collect contingent fees under the circumstances described herein, and whether such practice violates the Fair Debt Collection Act.

83.    Prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendant.

84.    Zwicker P.C. has acted on grounds generally applicable to the class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole.

85.    The Plaintiff's claim is typical of – indeed, is identical to - the claims of class members. Plaintiff has been harmed in the same manner as class members as a result of Defendant's conduct, and seeks similar relief.

86.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff is committed to a complete and thorough resolution of this matter, and as an attorney feels a special obligation to obtain redress for those who have been harmed by Defendant's unlawful collection practices. She has carefully selected counsel experienced in consumer and class action

litigation.  Neither Plaintiff nor counsel is aware of any factor which would cause either not to diligently pursue this action.

Wherefore, Plaintiff prays for a judgment: (a) enjoining Zwicker P.C. from representing that it is entitled to receive, and from attempting to collect, attorney's fees based on a percentage of the debtor's balance, where the underlying agreement creating the debt does not specifically provide for same; (b) ordering Zwicker, P.C. to rescind all contingent fees assessed against Plaintiff and class members, and to notify members and credit bureaus of said corrective action; (c) awarding Plaintiff and class members their actual damages and the maximum amount of statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(B), against Zwicker P.C. and Zwicker, jointly and severally; (e) awarding costs and reasonable counsel fees pursuant to 15 U.S.C. §1692k(a)(3); and (f) awarding such further relief as shall be just and proper.

## COUNT IX

## <u>VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT – UNLAWFUL ASSESSMENT OF ATTORNEY'S FEES  (ALL DEBTORS)</u>

87.    The allegations of paragraphs 1 – 86 are re-alleged and incorporated herein as if fully set forth.

88.    Plaintiff brings Count IX of this Complaint on behalf of herself and a class of persons similarly situated.  The class consists of all persons who were sent any collection letter by Zwicker, P.C. in the four-year period immediately preceding the filing of this Complaint which sought to collect an attorney's fee (whether designated as such or not) based on a percentage of the debt, where the agreement giving rise to the debt did not specifically provide for same, and which was not returned to sender.  Excluded from the class are persons who are or were employees, officers, or directors of Zwicker P.C.

89.   The conduct of Zwicker P.C. in assessing, attempting to collect, and actually collecting attorney's fees based on a percentage of the balance owed where the agreement giving rise to the debt did not specifically provide for same was unfair and/or deceptive in violation of G.L. c. 93A, section 2,

90.   Said unfair and/or deceptive conduct was willful and/or wanton in nature.

91.   On April 21, 2004, Plaintiff hand-delivered to Zwicker, P.C. by Constable a demand for relief pursuant to G.L. c. 93A, section 9, which reasonably described the unlawful acts complained of.   A true copy of said demand for relief is appended hereto as Exhibit G.  A true copy of the Constable's delivery receipt is appended hereto as Exhibit H.

92.   Zwicker P.C. did not make a written tender of settlement within the thirty (30) day period specified by G.L. c. 93A, section 9.   Instead, on May 24, 2004, said Defendant forwarded a letter to Plaintiff's counsel setting forth a late, and unreasonable, settlement offer.  A true copy of said letter is appended hereto as Exhibit I.

93.   Zwicker P.C.'s failure to make a reasonable written tender of settlement within 30 days of receipt of Plaintiff's demand was in bad faith with knowledge or reason to know that the acts and practices complained of violated G.L. c. 93A, section 2.

94.   Zwicker, P.C. holds itself out as one of the largest collection firms in the country, and, on information and belief (and according to its website), it frequently employs a contingency-fee arrangement with respect to the collection of consumer debts, many or most of which are believed to be based on agreements (such as credit card agreements) that do not specifically provide for or authorize the debtor to be charged a contingency fee.  Accordingly, the members of the class are sufficiently numerous such that joinder is impracticable.

95.    There are issues of law and fact common to class members, which issues predominate over any individual questions, and a class action is the superior method of resolving this controversy.  Common issues include Zwicker P.C.'s practice of assessing, attempting to collect, and collecting contingent fees under the circumstances described herein, and whether such practice violates G.L. c. 93A, §2.

96.    Prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendant.

97.    Defendant has acted on grounds generally applicable to the class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole.

98.    The Plaintiff's claim is typical of – indeed, is identical to - the claims of class members. Plaintiff has been harmed in the same manner as class members as a result of Defendant's conduct, and seeks similar relief.

99.    Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff is committed to a complete and thorough resolution of this matter, and as an attorney feels a special obligation to obtain redress for those who have been harmed by Defendant's unlawful collection practices.   She has carefully selected counsel experienced in consumer and class action litigation.  Neither Plaintiff nor counsel is aware of any factor which would cause either not to diligently pursue this action.

WHEREFORE, Plaintiff prays for a judgment: (a) enjoining Zwicker P.C. from assessing, attempting to collect, or collecting attorney's fees based on a percentage of the debtor's balance, where the underlying agreement creating the debt does not specifically provide

for same;   (b) ordering Zwicker, P.C. to rescind all contingent fees assessed against class members, and to notify members and credit bureaus of said corrective action; (c) awarding Plaintiff and class members their actual damages or $25.00 for each violation, whichever is greater, against Zwicker P.C. and Zwicker, jointly and severally; (d) doubling or trebling the amount of said damages awarded, pursuant to G.L. c. 93A, section 9; (e) awarding costs and reasonable counsel fees pursuant to G.L. c. 93A, section 9;  and (e) awarding such further relief as shall be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury on all claims.

MELANIE JOI FEUERSTEIN

By her attorney:

/s/Kenneth D. Quat
BBO #408640
9 Damonmill Square, Suite 4A-4
Concord MA 01742
978-369-0848
ken@quatlaw.com

<u>Certificate of Service</u>

I hereby certify that a copy of the foregoing (less exhibits) has been served on Robert W. Thuotte, Esquire, by mailing same via first class mail, postage prepaid, on the date below.

/s/Kenneth D. Quat

Dated:  6/14/05