UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MELANIE JOI FEUERSTEIN, <br> On behalf of herself and others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ZWICKER & ASSOCIATES, P.C., <br> PAUL W. ZWICKER, <br> JEFF W WIDRONIK a/k/a "Jeff Woods" <br> BRIAN COYLE, <br> ARTHUR J. TESSIMOND, JR., <br> PHILLIP M. THOMPSON,   and <br> DOES 1-5 <br><br> Defendants | Civil Action No. 04-11593-JLT |

**DEFENDANTS' OPPOSITION TO PLAITNIFF'S MOTION FOR CONTEMPT**

NOW COMES the defendants, ZWICKER & ASSOCIATES, P.C., PAUL W. ZWICKER, JEFF WIDRONIK, BRIAN COYLE, ARTHUR J. TESSIMOND, JR., and PHILLIP M. THOMPSON, and hereby oppose the plaintiff's Motion for Contempt. In support of this Opposition, the defendants state as follows:

**ARGUMENT**

**I. Plaintiff Has Failed to Comply with the Local Rules in Filing Her Motion**

Pursuant to Local Rule 37.1, before filing any discovery motion, like the one filed by the plaintiff, counsel for each of the parties shall confer in good faith to narrow the areas of disagreement to the greatest possible extent. Such conferences can be in person or over the telephone. See L. R. 37.1(A). There is no provision in the rules that allow for such conferences to be held via electronic mail, as took place in the instant case. Additionally, pursuant to L. R. 37.1(B), in filing a discovery motion, the moving party shall file a certificate with the details of

40547.2

the discovery conference. In her motion, the plaintiff filed a certificate referencing an e-mail exchange, whereby a little over 24 hours was given to respond rather than the required seven (7) days. See L. R. 37.1(A).

First, when it was indicated that 24 hours was not enough time to respond to the issue in detail, the Motion for Contempt was filed, in clear violation of the rules.

Second, an e-mail exchange is not sufficient to conclude a discovery conference has taken place and the motion should be denied without prejudice on that ground.

Lastly, the certificate accompanying the motion for contempt does not accurately reflect the topics addressed in such e-mail exchange in that it seeks to include additional areas of dispute not previously discussed. More specifically, the e-mail exchange referenced by the plaintiff in the certificate dealt solely with the issue of the production of the TGSLP and OGLSP letters and, at no time before the plaintiff attorney's last response before filing the motion, were the issues of financial statements, tax returns, or non-Mass. MEFA debtors and non-student loan debtors. (**See e-mail chain of communication, attached hereto as Exhibit No. 1**). Consequently, in filing her Motion the plaintiff has failed to comply with Local Rule 37.1 and such motion should be denied accordingly.

II.  **Plaintiff Is Not Entitled to Dunning Letters Sent to Non-MEFA Debtors.**

Even assuming that the plaintiff's failure to comply with L.R. 37 is not determinative of her motion, the plaintiff is not entitled to the documents she is requesting as part of her voluntary disclosure from the defendants.

As set forth in the original complaint filed by the plaintiff, the putative class was described as including similarly situated individuals who received dunning letters from Zwicker & Associates, PC (ZAPC) regarding a debt from the Massachusetts Educational Financing

2

40547.2

Authority (MEFA) where those letters attempted to collect attorney's fees. More specifically, the class was limited to MEFA debtors who had promissory notes with an attorney's fee provision similar to the plaintiff (**See Original Complaint, paras. 1, 58 and 67**). In complying with the Court's Rule 26 Discovery Order, the defendants provided the plaintiff with documents reflecting the number of similar letters sent to Massachusetts-MEFA debtors (as the plaintiff was) within 4 years of the filing of the complaint, notwithstanding the FDCPA's one-year limitation period.[1] In addition, the defendants provided the plaintiff with Recovery Management System Contract Master[2] (with redactions); a list of telephone calls; correspondence to/from ZAPC, MEFA, the plaintiff, and William Schwank; documents relative to the underlying loan transaction between MEFA and the plaintiff including, but not limited to Promissory Notes, Disclosure Statements, and Power of Attorney; the contract between ZAPC and MEFA; and documents relating the number of debtors in Massachusetts receiving a similar letter in the 4 year period; and information relating to attorney's fees recovered, if any, by ZAPC for each Massachusetts-MEFA debt.

On or about April 26, 2005, the plaintiff filed her First Amended Complaint that sought to expand the class. In that First Amended Complaint, the plaintiff identified the putative class to include any person who received a letter from the defendants on behalf of any debtor over a four-year period in which the letter includes attorneys fees in the amount owed. (**See First Amended Complaint, Counts VIII and IX**). In expanding the class the plaintiff seeks additional documents of questionable relevance without extending the time to produce such documents. In

---

[1] In contrast to the defendants' comprehensive production, the plaintiff limited production in response to the Discovery Order has consisted of demand letters and cancelled checks. Plaintiff has not produced a single document relating to prior loan obligations or creditor information, witness statements, recordings of messages noted in her complaints, personal notations, diary/journal entries, medical records, medical bills, or any other relevant document related to her individual claims.

[2] This production consists of screen printouts containing debtor information (which was redacted), charge-off amounts, recovered principal, associated costs, recovered costs, accrued interest, recovered interest, interest rate, balance owing, dates of payments, dates of contact, dates of judgment, and other information.

conversations with Plaintiff's counsel, it was communicated this expansion would be burdensome and that the defendants would object to the production during the voluntary disclosure stage. Using the information freely conveyed to the plaintiff regarding the creditors and the nature of the dispute, the plaintiff sought to again expand the putative class again in her Second Amended Complaint.

The plaintiff's Second Amended Complaint, which was filed on July 7, 2005, after the plaintiff filed her Motion for Contempt. The latest amendment seeks to further expand the putative class in two ways: (1) it removed the limiting language in the MEFA notes, to now include all MEFA debtors regardless of the language in the notes; and (2) it asked for any letter to any debtor for any reason where an attorney's fee were sought on a contingency basis, regardless if the fee was designated in the letter or not. (**See Second Amended Complaint, paras. 57, 66, 80 and 88**). At no time have the defendants agreed to any disclosure relating to these amendments since they are not relevant to the plaintiff's individual claim nor do the defendants believe that the plaintiff has standing to represent the class.

The issue is that as the class continues to expand, the plaintiff becomes farther and farther removed from the class. In her latest position, in "voluntary disclosure" the plaintiff seeks any letter sent to any debtor, of any creditor on whose behalf ZAPC was acting, anywhere in the country where attorney's fees were sought over a four-year period. This is too broad and extremely burdensome for the defendants. In essence, the plaintiff is seeking form dunning letters she never received issued on behalf of entities with which she has no credit relationship, for a time period for which she has no claims. The defendants have refused production of those documents as they believe such a disclosure is not within the meaning or spirit of a voluntary

4

40547.2

disclosure. Moreover, despite the overreaching allegation and attempted expansion of the class definition, the issue itself, in any form, is of questionable relevance.

The issue of the reasonableness of attorney's fees, while changing with each amended complaint, has never been relevant to the class claims given the case-by-case inquiry necessary in such an analysis. In her original complaint, the plaintiff contests the computation of attorney's fees and claims that contingent fees were unreasonable in her case, and as such, are unreasonable as to the putative class. While the defendants contest that such a claim is properly brought as a class action due to the differing nature of each debtor's circumstance, the issue as it relates to non-MEFA debtors, sought to be included in the amended complaints, is completely irrelevant to the instant action. That is because the non-MEFA debtors of ZAPC are all federal student loan guaranty agencies and computation of costs for these debts is mandated by federal law and regulations.[3] That is not the case with the plaintiff's MEFA debt.

The plaintiff also argues that the issue of whether the fees were disclosed warrants the production of the non-MEFA debtors' information regarding attorney's fees on the grounds that these letters violate the FDCPA.[4] The defendants disagree with this position because federal funds were used to pay on the defaulted loans, making certain federal laws and regulations

---

[3] See e.g., 34 C.F.R. § 682.410(b)

  (2) Collection charges. Whether or not provided for in the borrower's promissory note and subject to any limitation on the amount of those costs in that note, the guaranty agency **shall** charge a borrower an amount equal to reasonable costs incurred by the agency in collecting a loan on which the agency has paid a default or bankruptcy claim. These costs may include, but are not limited to, all attorney's fees, collection agency charges, and court costs. Except as provided in §§ 682.401(b)(27) and 682.405(b)(1)(iv), the amount charged a borrower must equal the lesser of --
   (i) The amount the same borrower would be charged for the cost of collection under the formula in 34 CFR 30.60; or
   (ii) The amount the same borrower would be charged for the cost of collection if the loan was held by the U.S. Department of Education. (emphasis added)

  (27) Collection charges and late fees on defaulted FFEL loans being consolidated. (i) A guaranty agency may add collection costs in an amount not to exceed 18.5 percent of the outstanding principal and interest to a defaulted FFEL Program loan that is included in a Federal Consolidation loan.

[4] The Second Amended Complaint, filed after the Motion for Contempt, goes beyond this and seeks any letter where attorneys fees were sought regardless of disclosure.

applicable to these letters that were not applicable to the plaintiff's letter: specifically, the Higher Education Act of 1965 (HEA). 20 USC § 1001, et seq. With respect to those dunning letters, ZAPC has not added any additional costs to the amount provided by the guaranty agency. However, the guaranty agency may have added costs to the balance, as mandated by federal regulations. See 34 CFR 682.410(b)(2). These collection costs are required under the HEA. See 20 USC § 1091a(b). Moreover, the regulations specifically allow for contingency fees in these circumstances.[5] Where the costs are mandated by federal law and regulations and are not applied by ZAPC but by the federal guaranty agency, there can be no FDCPA violation.

Lastly, the language in those letters contained safe harbor language as recommended by the Seventh Circuit in Chuway v. Nat'l Action Fin. Servs., 362 F.3d 944 (7th Cir. 2004). Consequently, the amount of the debt reported by ZAPC to the debtors was the total amount reported by the guaranty agency and, as the safe harbor language contained in those letters indicated, such amount may include additional costs mandated by federal law and regulations. All of these circumstances make these particular letters outside the scope of the purported class as well as any similarity the plaintiff purports to have with these debtors. Consequently, for all these reasons, the defendants objected to this request and have not produced said documents during this voluntary discovery period. Likewise, this Court should deny the plaintiff's Motion for Contempt.

### III. Plaintiff Is Not Entitled to Defendant's Tax Returns

The plaintiff asserts that ZAPC is obligated as part of its voluntary disclosure to provide her with tax records and its financial statements. This information is only relevant to determine

---

[5] 34 C.F.R. 30.60(b); See e.g., Gingo v. United States Dep't of Educ., 149 F. Supp. 2d 1195, 1209 (D. Cal. 2000)(reviewing formula in 34 C.F.R. 30.60(b) in holding that the guaranty agency "is given broad discretion to charge collection fees, the amount of which the guaranty agency decides, so long as the total charge does not exceed 18.5% of the loan plus interest").

the 1% net worth of the company to determine the level of statutory damages on the class action claim under the FDCPA. See 15 U.S.C. § 1692k(a)(2)(B). ZAPC is a private company whose certified financial statements were completed by a certified public accounting firm. Moreover, ZAPC has provided, in writing, on a number of occasions over the last few months an approximation of the 1% of its net worth and has offered to execute an affidavit to that effect. Additionally, after the audited financial statements were received, the defendant conveyed the exact amount of the net worth to the plaintiff.

The defendant has agreed to provide an inspection of this financial statement to the plaintiff once a Confidentiality Agreement is finalized. To date, the plaintiff and defendant cannot agree on the terms of the Confidentiality Agreement with respect to the financials. Consequently, they have not been provided but such a withholding is not frivolous or in bad faith. In fact, the pertinent, most relevant information desired by the plaintiff has been conveyed to him on numerous occasions and, as a result, is not prejudiced in any way while the issue of the Confidentiality Agreement is worked out or decided by the Court.

Another area of disagreement is that the plaintiff is of the opinion that she is entitled to the tax returns of ZAPC. However, it is ZAPC's position that the plaintiff's request of its tax returns are unnecessary, overly burdensome, and border on harassment. Consequently, ZAPC has never agreed and objects to any attempt to secure such records. In light of the voluntary disclosure the parties are currently in, ZAPC is well within its right to assert such a position.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons the defendants request that this Court deny the plaintiff's Motion for Contempt and award attorney's fees and costs incurred in defending same.

Respectfully Submitted,
ZWICKER & ASSOCIATES, P.C., PAUL
W. ZWICKER, JEFF WIDRONIK, BRIAN
COYLE, ARTHUR J. TESSIMOND, JR.,
and PHILLIP M. THOMPSON,
The defendants,


*/s/ Mark R. Freitas*
William T. Bogaert, BBO #546321
Mark R. Freitas, BBO #641205
Thomas A. Leghorn, (*pro hac vice*)
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER  LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

## CERTIFICATE OF SERVICE

I, Mark R. Freitas, do hereby certify that I have on this 13th day of July 2005, served a copy of the foregoing on the following:

> Kenneth Quat, Esq.
> 9 Dammonmill Square
> Suite 4A-4
> Concord, MA  01742
>
> Robert W. Thuotte
> Zwicker & Associates
> 100 Old River Road
> Andover, MA 01810

*/s/ Mark R. Freitas*
Mark R. Freitas

40547.2