UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MELANIE JOI FEUERSTEIN, <br> On behalf of herself and others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ZWICKER & ASSOCIATES, P.C., <br> PAUL W. ZWICKER, <br> JEFF W WIDRONIK a/k/a "Jeff Woods" <br> BRIAN COYLE, <br> ARTHUR J. TESSIMOND, JR., <br> PHILLIP M. THOMPSON,   and <br> DOES 1-5 <br><br> Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 04-11593-JLT <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANTS' OPPOSITION TO PLAITNIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

NOW COMES the defendants, Zwicker & Associates, P.C., Paul W. Zwicker, Jeff Widronik, Brian Coyle, Arthur J. Tessimond, Jr., and Phillip M. Thompson, and hereby oppose the plaintiff's Motion for Leave to File Third Amended Complaint.  In support of this Opposition, the defendants state as follows:

**ARGUMENT**

In general, "a party may amend the party's pleading only by leave of court . . . and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15. Leave to amend must be denied, however, if there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment. Foman v. Davis, 371 U.S. 178,

42727.1

182, (1962); Maine State Building and Construction Trades Council, AFLCIO v. United States Department of Labor, 359 F.3d 14, 19 (1st Cir. 2004).

In this case, the plaintiff seeks to amend her complaint for a third time to add claims that the language of the letter misrepresented the attorney involvement and was violative of the Fair Debt Collection Practices Act (FDCPA) and the Massachusetts Consumer Protection Act (herein after, "G.L. c. 93A" or "93A").  The Motion for Leave to File Third Amended Complaint should be denied because the proposed amendment is futile, there is undue delay and it would unduly prejudice the defendants.

I. **The Proposed Amendment Is Futile; Therefore, the Motion for Leave Should Be Denied**

Futility of a proposed amendment "is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." Hatch v. Department for Children, Youth and Their Families, 274 F.3d 12, 19 (1st Cir. 2001). In such circumstances, an "amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory." Id, at 19.  In other words, where the moving party seeks to add new legal claims, most courts have interpreted the "colorable grounds" requirement as mandating an inquiry comparable to that undertaken when analyzing a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Estate of Golas v. Paul Revere Ins. Group, 175 F.R.D. 421, 423 (D.Mass. 1997).  In her proposed amendment, the plaintiff seeks to bring a claim on behalf of the putative class alleging that the dunning letters sent by the defendants misrepresented the level of attorney involvement and are in violation of both the FDCPA and G.L. 93A. (**See Plaintiff's Proposed Third Amended Complaint, Counts X and XI**).  Neither the 93A claim nor the FDCPA claim could survive a motion to dismiss.

**A. There is no basis for the plaintiff's proposed c. 93A class claim**

The alleged class claim of violations of c. 93A is without merit because no demand letter was ever provided prior to initiating litigation, as is required by the statute. Boston vs. Aetna Life Ins. Co., 379 Mass. 569, 574 (1987). In order to qualify as a proper demand under G.L. c. 93A, a letter must describe with reasonable specificity the unfair or deceptive act relied upon in support of the c. 93A claim. Gilleran, THE LAW OF CHAPTER 93A, 201 (1989); M.G.L. c. 93A, §9(3)(demand must "reasonably describe the unfair or deceptive act relied upon"); See Heller vs. Siliver Branch Construction Corp., 376 Mass. 621, 627 (1978)(the demand letter must identify "specific unfair practices"); Entriaglo vs. Twin City Dodge, Inc., 368 Mass. 812, 813 (1975) (demand letter must list the specific deceptive practices claimed); Mackenzie vs. Auto Supermart, Inc., 1988 Mass. App. Div. 5, 7 (1988) ("It is now well established that the demand letter listing the specific deceptive practices claimed is a prerequisite to suit and must be alleged and proved.") In this case, the plaintiff provided a purported demand letter pursuant to G.L. c. 93A, which made no reference to the acts described in the proposed amendment. (**See Plaintiff's Purported Demand Letter, attached hereto as Exhibit 1**). As such, the defendants have not been given an opportunity to respond to these claims or make a reasonable offer of settlement. Where the plaintiff has failed to specify these acts in her demand letter, her 93A claim must fail. A plaintiff's failure to satisfy the demand requirements entitles the defendants, upon an appropriate motion, to either a dismissal of the lawsuit, Ricky Smith Pontiac, Inc., 4 Mass. App. Ct. at 432 n. 42 (1982), or to summary judgment. Boston vs. Aetna Life Ins. Co., 399 Mass. 569, 574 (1987). In this instance, following the holding in Hatch v. Department for Children, Youth and Their Families, 274 F.3d 12, 19 (1st Cir. 2001), this court should deny the plaintiff's Motion for Leave to File a Third Amended Complaint as to the c. 93A claims because they are futile.

42727.1

**B. The language of the letter complained of by the plaintiff in her proposed amendment, and the circumstances as alleged, do not give rise for confusion to any reasonable, college-educated consumer.**

The proposed amendment alleges that the defendants misrepresented the level of attorney involvement in the collection of the account. However, the letters received by Feuerstein was signed by an attorney, indicating at least a modicum of attorney involvement. Likewise, the back of the letter indicates attorney involvement in that it discusses how the defendant uses a computer generated process to send their dunning letters. The language continues on to state that a computerized process analyzes computerized data of the debtor to determine the appropriate correspondence to send. More specifically, it states that "THE COMPUTERIZED PROCESS WAS DESIGNED AND TESTED BY AN OFFICE ATTORNEY IN ORDER TO DETERMINE THE APPROPRIATENESS OF THE CORRESPONDENCE TO THE RECIPIENT." It also states that regardless of who signed the front of the letter, by approving the computerized process an attorney approved the sending of the letter. In this case, an attorney signed the front of every letter received by Feuerstein. Thus, the back of the letter, as well as the front, represents an attorney was involved in the case.

The issue here is that the language on the front of the letter states that unless payment is made, "this office will conduct a review of your account." It is assumed that the plaintiff will make the argument that this suggests there was no attorney involvement. This argument fails to consider the letter in its full context; on further reading of the next sentence, it is explained what a review entails. It provides that a "review is undertaken to determine the presence, or lack thereof, of a dispute as to the indebtedness and, if none, the most effective means to secure repayment." Thus, it is implied that an attorney reviewed the data received from the creditor to ensure that there was a debt and that the debtor information was accurate and correlated to the

4

42727.1

alleged debt. This, in turn, results in the sending of the letter. In other words, the approval of sending the letter is the attorney involvement, not reviewing the account to determine if there is a dispute as to the debt. Thus, to a college-educated consumer (as is the standard to be applied in this case, see Section C, *infra*), there is no inconsistency, or confusion, as to the level of attorney involvement when one reads the letter in its entirety.

In <u>Sparkman</u>, the court noted that some degree of attorney involvement is required before a letter will be considered to be from an attorney within the meaning of the FDCPA. <u>Sparkman v. Zwicker & Assocs., P.C.</u>, 374 F. Supp. 2d 293 (D.N.Y. 2005), citing <u>Miller v. Wolpoff & Abramson, LLP</u>, 321 F.3d 292, 301 (2d Cir. 2003). Here, there is some degree of attorney involvement. The <u>Sparkman</u> court went on to hold that the "use of an attorney's signature on a collection letter implies that the letter is 'from' the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent ... The use of an attorney's signature implies-- at least in the absence of language to the contrary-- that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent." <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1321 (2d Cir. 1993). Here, the implication is appropriate. The back of the letter specifically states that an attorney directly controlled or supervised the process through which the letter was sent. Furthermore, it can also be inferred from the language that the signing attorney did form an opinion no how to manage. The attorney determined that the creditor provided reliable information as to the existence of a debt and that a dunning letter should be sent to inform the debtor of this purported debt and inform her of her right to dispute it.

It is important to note that the debtor in <u>Sparkman</u> was a credit card debtor while here Feuerstein is a college loan debtor. The reasonable least sophisticated consumer of

5

42727.1

Chase/Mastercard is far less sophisticated than the reasonable least sophisticated consumer of MEFA. See Vaughn v. CSC Credit Servs., 1995 U.S. Dist. LEXIS 1358, *17 (D. Ill. 1995); Under these circumstances, and applying this standard, the language is clear and unambiguous and there is no misrepresentation as to the level of attorney involvement. Therefore, there is no violation and the plaintiff's Motion for Leave should be denied.

### C. The plaintiff would not be an adequate class representative.

In the proposed amendment, Feuerstein alleges that she would be an adequate class representative. However, she will be unable to satisfy the threshold questions of commonality or typicality necessary to certify a class. "A sufficient nexus is established [to show typicality] if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75 (D. Mass. 2005) (citations omitted). In this case, however, the plaintiff is not the typical consumer that would best represent the interests of the class.

"When considering whether a collection practice violates the FDCPA, courts look to whether the objective 'least sophisticated consumer' would find the practice improperly threatening or misleading." Dolan v. Schreiber & Assocs., P.C., 2002 U.S. Dist. LEXIS 6005 (D. Mass. 2002), citing Martin v. Sands, 62 F. Supp.2d 196, 199 (D. Mass. 1999). However, the least sophisticated consumer standard retains the concept of reasonableness, so that a debt collector will not be held liable for "bizarre or idiosyncratic interpretations of debt collection notices." Clomon v. Jackson, 988 F.2d 1314, 1319-20 (2d Cir. 1993); see also Hart v. GMAC Mortg. Corp. (In re Hart), 246 B.R. 709, 730 (Bankr. D. Mass., 2000) (The standard is meant to describe the "hypothetical consumer whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading"). In performing this analysis, the type of debt is

6

42727.1

important in determining the "least sophisticated consumer" standard.  See Vaughn v. CSC Credit Servs., 1995 U.S. Dist. LEXIS 1358, *17 (D. Ill. 1995); See also Gammon v. GC Servs. Ltd. Partnership, 27 F.3d 1254, 1259 (7th Cir. 1994) (Easterbrook, J., concurring).

In the claims brought by the prior two amendments, as well as the original complaint, the putative class is arguably limited to debtors of the Massachusetts Educational Financing Authority (MEFA), which provides student loans to Massachusetts college students who need some financial assistance.  Thus, in those claims, the reasonable consumers are all college educated MEFA debtors just like Feuerstein.  However, by expanding the class as broadly as the proposed amendment seeks, the debtors who received the subject letter include student loan debtors, credit card debtors, etc.  While sub classes are generally recognized, here there is no member of the larger class who is in the same position as the least sophisticated consumer.  In essence, the plaintiff would be seeking to become the class representative for a putative class that she shares no typicality or commonality with.  Consequently, this proposed amendment is too expansive and fatally flawed.

## II. **There Is Undue Delay Brining the Proposed Amendment and the Plaintiff's Motion Should Be Denied Accordingly.**

Here, the plaintiff concedes in her Motion for Leave that she and her counsel have been aware of this basis for this claim for some time and that "the only reason plaintiff did not plead [these] class claims in the earlier complaints is that a purported nationwide class action addressing the identical issue…had previously been filed by a consumer law attorney known to plaintiff and plaintiff's counsel; as a matter of professional courtesy, plaintiff did not wish to file a "copy-cat" claim."  See Plaintiff's Motion for Leave to File Third Amended Complaint (emphasis added).

In the case referred to by the plaintiff, there was never any attempt at class certification and Sparkman's claims were resolved by summary judgment. Thus, there was no reasonable reliance on the part of Feuerstein that she, or her putative class, would be included as members in this other action. In essence, as the plaintiff stated in her motion, the only reason for not filing the claim earlier was due to professional courtesy. However, that courtesy did not extend to the defendants or this Court. The decision to intentionally delay bringing forth these claims should not be rewarded with the allowance of her motion. The plaintiff admittedly had the evidence and was aware of the factual basis for alleging the proposed amended claims for a substantial period of time. Additionally, this proposed amendment would have the effect of essentially expanding the nature and scope of this case over one-thousand-fold. Such a deliberate delay cannot be tolerated. "Essentially, the amendment adds too much, too late." United States ex rel. Franklin v. Pfizer, Inc., 2002 U.S. Dist. LEXIS 5761 (D. Mass. 2002) (citations omitted). Consequently, this Court should deny the plaintiff's Motion for Leave to File Third Amended Complaint.

### III. Plaintiff Proposed Amendment Would Unduly Prejudice the Defendants.

In the proposed amendment, the putative class would essentially include all debtors who received collection letters from the defendants. As it stands now, the putative class is arguably limited to all MEFA debtors who received collection letters from the defendants as the reasonable attorneys fees question at issue only existed on the MEFA accounts handled by the defendants. Expanding the class to include each and every other debtor who received an applicable dunning letter would unduly prejudice the defendants by requiring an excessive amount of additional research and discovery where the plaintiff was aware of the evidence and factual circumstances long before seeking the amendment. See Marsman v. Western Electric Co., 719 F. Supp. 1128, 1142 (D. Mass. 1988), citing Serrano Medina v. United States, 709 F.2d

8

42727.1

104, 106 (1st Cir. 1983). With the plaintiff's intentional delay causing this prejudice to the defendants, this Court is warranted in denying her Motion for Leave to File Third Amended Complaint.

## CONCLUSION

WHEREFORE, for the foregoing reasons the defendants request that this Court deny the plaintiff's Motion for Leave to File Third Amended Complaint and award attorney's fees and costs incurred in defending same.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), the defendants request that oral argument be permitted.

Respectfully Submitted,
ZWICKER & ASSOCIATES, P.C., PAUL W. ZWICKER, JEFF WIDRONIK, BRIAN COYLE, ARTHUR J. TESSIMOND, JR., and PHILLIP M. THOMPSON,
The defendants,

*/s/ Mark R. Freitas*
William T. Bogaert, BBO #546321
Mark R. Freitas, BBO #641205
Thomas A. Leghorn, (*pro hac vice*)
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER  LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

42727.1

## CERTIFICATE OF SERVICE

I, Mark R. Freitas, do hereby certify that I have on this 31st day of August 2005, served a copy of the foregoing on the following:

    Kenneth Quat, Esq.
    9 Dammonmill Square
    Suite 4A-4
    Concord, MA  01742

    Robert W. Thuotte
    Zwicker & Associates
    100 Old River Road
    Andover, MA 01810

    */s/ Mark R. Freitas*
    Mark R. Freitas

42727.1