**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MELANIE JOI FEUERSTEIN, <br> On behalf of herself and others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ZWICKER & ASSOCIATES, P.C., <br> PAUL W. ZWICKER, <br> JEFF W WIDRONIK a/k/a "Jeff Woods" <br> BRIAN COYLE, <br> ARTHUR J. TESSIMOND, JR., <br> PHILLIP M. THOMPSON, and <br> DOES 1-5 <br><br> Defendants | Civil Action No. 04-11593-JLT |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAITNIFF'S COMPLAINT

NOW COME the defendants, Zwicker & Associates, P.C., Paul W. Zwicker, Jeff Widronik, Brian Coyle, Arthur J. Tessimond, Jr., and Phillip M. Thompson (collectively referred to hereinafter as "defendants"), and submit the following Memorandum of Law in Support of Their Motion to Dismiss the Plaintiff's Complaint.

### I. STATEMENT OF MATERIAL FACTS

For purposes of this Motion only, the following facts are not in dispute:

The plaintiff received student loans in connection with her attendance at law school.[1] The repayment of her law school loans began on or about December 2000.[2] Disputes arose over the payment on those loans.[3] The collection of the amount owing was referred to the defendant

---

[1] Plaintiff's Third Amended Complaint at ¶ 13.
[2] Id. at ¶ 17.
[3] Id. at ¶¶ 18-28.

47467.1

Zwicker & Associates, P.C. ("Zwicker") and resulted in the sending of dunning letters to the plaintiff on or about February 26, 2003.[4] With no payment received, Zwicker sent another round of dunning letters to the plaintiff on or about March 26, 2003.[5] With no receipt of payment, on or about July 16, 2003, Zwicker sent another round of dunning letters to the plaintiff.[6] Then, on or about March 1, 2004, the plaintiff received another round of dunning letters from Zwicker.[7]

On April 21, 2004, the plaintiff delivered a purported M.G.L. c. 93A demand letter to Zwicker.[8] Zwicker responded to that demand letter[9] and the plaintiff then filed this case alleging intentional infliction of emotional distress, abuse of process, invasion of privacy and assorted violations of the FDCPA and G.L. c. 93A.[10]

## II. STANDARD OF REVIEW

For the purposes of a Rule 12 (b)(6) motion to dismiss, the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Giuliano v. Fulton, 399 F. 3d 381, 386 (1st Cir. 2005) (quoting Martin v. Applied Cellular Tech., 284 F.3d 1, 6 (1st Cir. 2002)). Dismissal of a claim is not appropriate unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

In the plaintiff's Third-Amended Complaint, the plaintiff attaches as exhibits numerous documents and relies on those documents in asserting her allegations. Consequently, the court

---

[4] Id. at ¶ 29(l).
[5] Id. at ¶ 29(q).
[6] Id. at ¶ 29(x).
[7] Id. at ¶ 29(dd).
[8] Id. at ¶ 29(ff).
[9] Id. at Exhibit I.
[10] Id.

47467.1

may consider these documents without converting the defendants' motion to dismiss to a motion for summary judgment. See Clorox Co. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (stating that when reviewing a motion to dismiss, a court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment") (citations and internal quotations omitted).

## III. ARGUMENT

### A. PLAINTIFF'S CLAIMS FOR CLASS RELIEF UNDER THE MASSACHUSETTS CONSUMER PROTECTION STATUTE ARE IMPROPER; THEFORE NO RELIEF CAN BE GRANTED AND THEY MUST BE DISMISSED

#### 1. The Plaintiff Failed to Provide a Written Demand for Relief Prior to Litigation As Required By the Statute

In her Third Amended Complaint, the plaintiff brings claims on behalf of the putative class alleging violations of the Massachusetts Consumer Protection Statute, M.G.L. c. 93A. More specifically, in Counts VII, IX, and XI, the plaintiff alleges that she hand-delivered a demand for relief pursuant to M.G.L. c. 93A, § 9.[11] These Counts allege violations of M.G.L. c. 93A for non-disclosure of attorney's fees (Count VII), unlawful assessment of attorney's fees (Count IX), and deceptiveness as to degree of attorney involvement (Count XI). In each of those Counts, the plaintiff references her purported demand for relief, which she attached to her complaint as Exhibit G.[12] She further alleges that in each of those Counts this purported demand letter "reasonably describes the unlawful acts complained of."[13] However, this is not the case.

An individual asserting a claim under M.G.L. c. 93A, §9 must prove, as an essential element of the claim, the delivery of an adequate demand letter 30 days before commencing the

---

[11] See Plaintiff's Third Amended Complaint, ¶¶ 69, 91 and 114, respectively.
[12] See id.
[13] Id.

action. Boston vs. Aetna Life Ins. Co., 379 Mass. 569, 574 (1987); Ricky Smith Pontiac, Inc. vs. Subaru of New England, Inc., 14 Mass. App. Ct. 396, 432 n. 42 (1982). "A demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a special element must be alleged and proved." Esther Entrialgo vs. Twin City Dodge, Inc., 368 Mass. 897, 813 (1975). The demand letter is a jurisdictional requirement under G.L. c. 93A, §9. Slaney vs. Westwood Auto, Inc., 366 Mass. 688, 704 (1975). A plaintiff's failure to satisfy the demand requirements, consequently, entitles the defendant, upon an appropriate motion, to a dismissal of the M.G.L. c. 93A claims. Ricky Smith Pontiac, Inc., 14 Mass. App. Ct. at 432 n. 42 (1982).

In order to qualify as a proper demand under M.G.L. c. 93A, §9(3), a letter must describe with reasonable specificity the unfair or deceptive act relied upon in support of the c. 93A claim. Gilleran, THE LAW OF CHAPTER 93A, 201 (1989); M.G.L. c. 93A, §9(3)(demand must "reasonably describe the unfair or deceptive act relied upon"); See Heller vs. Silver Branch Construction Corp., 376 Mass. 621, 627 (1978)(the demand letter must identify "specific unfair practices"); Entriaglo vs. Twin City Dodge, Inc., 368 Mass. 812, 813 (1975) (demand letter must list the specific deceptive practices claimed); Mackenzie vs. Auto Supermart, Inc., 1988 Mass. App. Div. 5, 7 (1988) ("It is now well established that the demand letter listing the specific deceptive practices claimed is a prerequisite to suit and must be alleged and proved").

In the case at bar, the plaintiff did not describe with reasonable specificity the unfair or deceptive acts relied upon in support of the M.G.L. c. 93A putative class claims for non-disclosure of attorney's fees, unlawful assessment of attorney's fees, or deceptiveness as to the degree of attorney involvement. While a plaintiff may set forth a demand letter on behalf of the class[14], that demand letter must still describe the unfair or deceptive acts relied upon. Thorpe vs. Mutual of Omaha Ins. Co., 984 F. 2d 541, 44 (1st Cir. 1993). This is essential because it

---

[14] Baldassari v. Public Finance Trust, 369 Mass. 33, 42 (1975).

47467.1

"provides the prospective defendants with an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied...." Spring vs. Geriatric Authority of Holyoke, 394 Mass. 274, 288 (1985). Here there was no such opportunity. The plaintiff merely made a very broad generalization that the letters misrepresented the status and amount owed without specifying any basis for such a position or how the amount owed was misrepresented.[15] Nowhere did the plaintiff mention non-disclosure of attorney's fees, unlawful assessment of attorney's fees, or deceptiveness as to the degree of attorney involvement. The plaintiff never sought relief for these alleged unfair or deceptive practices and, accordingly, the defendants were never given an opportunity to make a reasonable offer of settlement on those claims. Thorpe, 984 F. 2d at 544. Consequently, there is no basis upon which relief can be granted and this Court must dismiss Counts VII, IX, and XI of the plaintiff's Third Amended Complaint.

**2. Federal Law Preempts the Remedy Provisions of the Massachusetts Consumer Protection Statute**

The power of Congress "to preempt state law derives from the Supremacy Clause of Article VI of the Constitution." French v. Pan Am Express, Inc. 869 F.2d 1, 1 (1st Cir. 1989) (internal citations omitted). Morales v. Trans World Airlines Inc., 504 U.S. 374, 383 (1992) (internal citation omitted). "The guiding principle throughout the preemption analysis is Congressional intent." In re Pharm. Indus. Average Wholesale Price Litig., 263 F. Supp. 2d 172, 187 (D. Mass. 2003)(citing Cal. Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 280 (1987)). In the analysis applicable here, even in the absence of a direct conflict, a state law violates the Supremacy Clause when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Mass. Med. Soc'y v. Dukakis, 815 F.2d 790, 791 (1st

---

[15] See Plaintiff's Third Amended Complaint, Exhibit G at ¶¶ 12, 17, 23, and 28.

47467.1

Cir. 1987) (citations omitted); see also Morales v. Trans World Airlines Inc., 504 U.S. 374, 383 (1992) (holding that preemption "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose")(internal citation omitted).

> a) **Massachusetts Consumer Protection Statute Is Not a Law for Debt Collection Purposes and Conflict Preemption Requires the FDCPA'S Remedy Provisions to Trump State Law; Therefore, Claims Seeking Remedy Under State Law Must Be Dismissed.**

The FDCPA contains preemption language, but that language is directed toward state laws that deal directly with debt collection practices:

> This subchapter does not annul, alter, or affect or exempt any person subject to the provisions of this subchapter from complying with the *laws of any State with respect to debt collection practices*, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.

15 U.S.C. § 1692n (emphasis added). It is clear that a State law that specifically regulates debt collection is not preempted by the FDCPA, as long as the state law provides the debtor the same or greater protection from improper conduct than the FDCPA. 15 U.S.C. § 1692n. Here, however, M.G.L. c. 93A is not a law "with respect to debt collection practices"; instead, it is more general in nature. The State law with respect to debt collection practices is M.G.L. c. 93, §49. That statute provides the following protection to consumers:

> No one who is a creditor or an attorney for a creditor, or an assignee of a creditor, of a natural person present or residing in Massachusetts who has incurred a debt primarily for personal, family or household purposes shall collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner. For the

47467.1

> purposes of this section, such collection or attempt to collect shall be deemed unfair, deceptive or unreasonable if:
>
> (a) The creditor communicates, threatens to communicate, or implies the fact of such debt or alleged debt to a person other than the person who might reasonably be expected to be liable therefor, or to an authorized user after the fact if that status is communicated to the creditor in writing, except with the written permission of the alleged debtor. The provisions of this paragraph shall not prohibit a creditor from notifying a debtor of the fact that the creditor may report a debt or alleged debt to a credit bureau or engage an agent or an attorney for the purpose of collecting the debt or alleged debt. For the purposes of this paragraph, the use of language on envelopes indicating that the communication relates to the collection of a debt shall be deemed a communication of such debt or alleged debt.
>
> (b) The creditor communicates directly with the alleged debtor after notification from an attorney representing such debtor that all further communications relative to the debt should be addressed to him.
>
> (c) The creditor communicates with the alleged debtor in such a manner as to harass or embarrass the alleged debtor, including, but not limited to communication at an unreasonable hour, with unreasonable frequency, by threats of violence, by use of offensive language, or by threats of any action which the creditor in the usual course of business does not in fact take.
>
> (d) The creditor communicates with alleged debtors through the use of forms or instruments that simulate the form and appearance of judicial process.
>
> Failure to comply with the provisions of this section shall constitute an unfair or deceptive act or practice under the provisions of chapter ninety-three A.

A clear reading of this statute reveals that it does not provide any protection to consumers with respect to the language contained in dunning letters, which are the claims of the putative class. Therefore, this statute, and the incorporation therein of M.G.L. c. 93A is not relevant to the role of the preemption.   As a result, this Court must look to see if M.G.L. c. 93A is preempted to the

47467.1

extent of the remedy provided. However, because M.G.L. c. 93A is not a law for debt collection purposes, there is no explicit preemptive language provided by the FDCPA.

In the absence of explicit preemptive language, the United States Supreme Court has recognized two types of "implied preemption." Gade v. National Solid Wastes, 505 U.S. 88, 98 (1992). First is "field preemption," which is "where the scheme of federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" Id. (citation omitted). This is not applicable here because Congress specifically addressed preemption and then granted the exception to that preemption by giving states the right to legislate in the field of debt collection practices in addition to Congress.

Second is "conflict preemption," which is "where state law 'stands as an obstacle to the accomplishment and execution of the *full purposes and objectives* of Congress'" embodied by the federal law. Id. (emphasis added). The civil remedies section of the FDCPA preempts the remedies provided by M.G.L. c. 93A, § 9(3) under the doctrine of "conflict preemption" to the extent that recovery on those claims conflicts with the recovery provided under § 1692k.

By capping the recovery under the FDCPA, Congress clearly concluded that potential liability for class statutory damages of $500,000 or 1 percent of the net worth of the debt collector, whichever is less, plus attorneys' fees would suffice to deter would-be violators of the FDCPA. In the case at bar, however, the plaintiff seeks to invoke a M.G.L. c. 93A, § 9(3) damage calculation on a per letter basis over a four-year period.[16] Thus, the damages would be $25 in statutory damages multiplied across the entire putative class, which, as currently alleged, would allow a recovery exceeding $15,190.48, which is 1% of the net worth of Zwicker &

---

[16] It is the position of the defendants that the proper calculation of statutory damages under M.G.L. c. 93A, § 9(3), would be per person, not per letter. See e.g., Leardi v. Brown, 394 Mass. 151, 164 (1985)("Mindful of 'piling on sanctions unthinkingly once an illegality is found,' Town Planning & Eng'g Assocs. v. Amesbury Specialty Co., 369 Mass. 737, 746 (1976), the judge only allowed one award of statutory damages per tenant"). Regardless of the "per letter" versus "per debtor" calculation, the conflict still exists.

47467.1

Associates. However, § 1692k limits the liability of a debt collector for engaging in the type of conduct proscribed by the FDCPA so as "not to exceed the lesser of $ 500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k.  The inconsistency is clear.

Allowing the plaintiff to pursue her claims for putative class relief pursuant to a calculation of damages under M.G.L. c. 93A, § 9(3) would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in limiting class relief under the FDCPA.  See Thrasher v. Cardholder Services, 74 F.Supp. 2d 691, 695 (S.D. Miss. 1999) (holding that the remedy provisions of Mississippi's Consumer Protection Statute are preempted by the FDCPA).  Furthermore, Congress clearly meant to preempt some state causes of action because it specifically addressed preemption in § 1692n. In fact, the legislative history denoting the relation of the FDCPA to State laws clearly distinguishes the remedy provisions are not exempted from preemption when it reads that "States with substantially similar laws may be exempted from the act's requirements (but not its remedies) by applying to the Federal Trade Commission." S.Rep. No. 382, 95th Cong., 1st Sess., reprinted in 1977 U.S.C.C.A.N. 1695.  For these reasons, this Court must dismiss the plaintiff's M.G.L. c. 93A class claims to the extent those claims seek relief that is preempted by Federal law.

> b) **Even If The Massachusetts Consumer Protection Statute Is A Law For Debt Collection Purposes, The Remedy Provisions Of That Statute Are Preempted By Federal Law; Therefore, Claims Seeking Remedy Under State Law Must Be Dismissed.**

As noted above, a state law that specifically regulates debt collection is not preempted by the FDCPA, as long as the state law provides the debtor equal or greater protection from improper conduct than the FDCPA. 15 U.S.C. § 1692n.  It is true that other courts have found "regulations issued by the Massachusetts Attorney General provide that violations of the FDCPA are per se violations of M.G.L. c. 93A, § 2." Dean v. Compass Receivables Mgmt. Corp., 148 F.

47467.1

Supp. 2d 116, 119 (D. Mass. 2001); see also Martin v. Sands, 62 F. Supp. 2d 196, 201 (D. Mass. 1999). Assuming, *in arguendo*, that the Attorney General regulations are enough to make M.G.L. c. 93A, § 2 a law specifically regulating debt collection practices, the protection afforded by the regulation is identical to the FDCPA. The Attorney General regulation referred to, 940 C.M.R. 3.16, specifically reads "Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of M.G.L. c.93A, § 2 if ….[i]t violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act [of which the FDCPA is a part of] or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, § 2." Thus, Massachusetts consumers are protected from the same violative conduct that they are protected from pursuant to the FDCPA. If conduct violates the FDCPA, it also violates M.G.L. c. 93A, § 2. One equals the other. That is to say, there is no greater protection.

  The distinction between protection and remedy is critical in this case. Protection is afforded through the creation of rights of private persons. "The distinction between rights and remedies is fundamental. A right is a well founded or acknowledged claim; a remedy is the means employed to enforce a right or redress an injury." Chelentis v. Luckenbach S.S. Co., 247 U.S. 372, 384 (1918). More specifically, increasing the statute of limitations from one year (under the FDCPA) to four years (under M.G.L. c. 93A) affords greater protection because it allows for more claims to be brought by private persons. However, altering the calculation of damages to be virtually limitless in its application (as discussed above in M.G.L. c. 93A, § 9(3)) provides a greater remedy but no greater protection. This is not to say that M.G.L. c. 93A, § 9(3) statutory damages must be automatically preempted. On the contrary, individual relief of $25 for statutory damages is less than the individual relief of $1,000 for statutory damages under the FDCPA and would be permissible. However, M.G.L. c. 93A does not provide for a limit on

47467.1

class recovery where the FDCPA does. Thus, when the calculation of damages under M.G.L. c. 93A, § 9(3) exceeds the lesser of $500,000 or 1% of the net worth of the debt collector, it is inconsistent with the FDCPA, §1692k, and is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress and, accordingly, its remedy provisions must be preempted. Accordingly, all claims brought by the plaintiff that seek remedial relief under G.L. c. 93A must be dismissed.

### B. PLAINTIFF DOES NOT MAKE ANY ALLEGATIONS AGAINST PAUL W. ZWICKER; THEREFORE, THERE ARE NO CLAIMS UPON WHICH RELIEF CAN BE GRANTED AND HE SHOULD BE DISMISSED FROM THIS ACTION.

One cannot be held liable for the actions of the corporation simply by virtue of his status as an officer, director or shareholder. Musso v. Seiders, 194 F.R.D. 43, 46 (D. Conn. 1999). "The Fair Debt Collection Practices Act is not aimed at the shareholders of debt collectors operating in the corporate form unless some basis is shown for piercing the corporate veil." White v. Goodman, 200 F.3d 1016, 1019 (7th Cir. 2000) (citations omitted). In fact, to bring a case against a shareholder simply because of his status may be sanctionable conduct.

> Because such individuals do not become 'debt collectors' simply by working for or owning stock in debt collection companies, we held [in a prior decision] that the [FDCPA] does not contemplate personal liability for shareholders or employees of debt collection companies who act on behalf of those companies, except perhaps in limited instances where the corporate veil is pierced . . . . Individuals who do not otherwise meet the statutory definition of 'debt collector' cannot be held liable under the Act . . . . FDCPA suits against the owners of a debt collection company who are not otherwise debt collectors are frivolous and might well warrant sanctions.

Pettit v. Retrieval Masters, 211 F.3d 1057, 1059 (7th Cir. 2000) (citations omitted).

In this case, the plaintiff has not alleged that Paul Zwicker was personally involved in the collection of a debt. Rather, she merely names him as a defendant because she believes him to

47467.1

be the President and sole shareholder of Zwicker & Associates, P.C.[17]  Absent any allegation that Paul Zwicker was personally involved in the collection of a debt, the plaintiff has failed to state a claim upon which relief can be granted and, accordingly, Paul Zwicker should be dismissed from this action.  See Musso, 194 F.R.D. at 46; see also Pettit, 211 F.3d at 1059.

## IV. CONCLUSION

WHEREFORE, for the foregoing reasons the defendants request that this Court dismiss Counts VII, IX and XII of the plaintiff's Third Amended Complaint with prejudice.

### REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), the defendants request that oral argument be permitted.

Respectfully Submitted,
ZWICKER & ASSOCIATES, P.C., PAUL W. ZWICKER, JEFF WRODONIK, BRIAN COYLE, ARTHUR J. TESSIMOND, JR., and PHILLIP M. THOMPSON
The defendants,

 /s/ Mark R. Freitas
William T. Bogaert, BBO #546321
Mark R. Freitas, BBO #641205
Thomas A. Leghorn, (pro hac vice)
WILSON ELSER MOSKOWITZ EDELMAN & DICKER  LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

---

[17] See Plaintiff's Third Amended Complaint, ¶ 7.

47467.1

**CERTIFICATE OF SERVICE**

    I, Mark R. Freitas, do hereby certify that I have on this 8th day of November 2005, served a copy of the foregoing on the following:

    Kenneth Quat, Esq.
    9 Dammonmill Square
    Suite 4A-4
    Concord, MA  01742

    Robert W. Thuotte
    Zwicker & Associates
    100 Old River Road
    Andover, MA 01810

    /s/ Mark R. Freitas
    Mark R. Freitas

47467.1