## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MELANIE JOI FEUERSTEIN,     ) | |
| On behalf of herself and others similarly  ) | |
| situated,      ) | |
|         Plaintiffs  ) | |
|      ) | |
| v.      ) | C.A. Number 04-11593-JLT |
|      ) | |
| ZWICKER & ASSOCIATES, P.C.,  ) | |
| PAUL W. ZWICKER,   ) | |
| JEFF WIDRONIK,   ) | |
| BRIAN COYLE,   ) | |
| ARTHUR J. TESSIMOND, JR.,  ) | |
| PHILLIP M. THOMPSON, and  ) | |
| DOES 1 – 5     ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CERTAIN COUNTS OF PLAINTIFF'S COMPLAINT

Plaintiff Melanie Joi Feuerstein hereby opposes the motion brought by defendants

to dismiss Counts VII, IX and XI of the Third Amended Complaint ("TAC"), as well as

the claims asserted against Paul W. Zwicker.[1]

## Introduction

Defendant Zwicker & Associates, P.C. ("Zwicker P.C.") is a law firm whose

business consists primarily of the collection of consumer debts.  The named individual

defendants are current and former employees of Zwicker P.C.

---

[1] The motion purports to be brought on behalf of all defendants.  However, it is clear from both the motion and memorandum of law that the only claims encompassed by the motion are those asserted against Zwicker & Associates, P.C. in Counts VII, IX, and XI of the TAC, and those asserted against Paul W. Zwicker.

Plaintiff has brought claims to recover damages resulting from a litany of abusive and unconscionable conduct which the firm and several employees directed toward her in the course of attempting to collect 4 student loans, which loans were used by plaintiff to attend Boston University Law School (Counts I – V of the TAC).   Plaintiff has also asserted class claims against Zwicker P.C. for damages and injunctive relief arising out of certain unlawful practices it employs in attempting to collect consumer debts.  These are: (i) assessing debtors with attorney's fees which are not authorized by the underlying agreement which created the debt or state law; (ii) concealing attorney's fees in the balances set forth in collection letters; and (iii) sending collection letters which misrepresent that they are from an attorney and which are otherwise deceptive with respect to attorney involvement.   Plaintiff alleges, and defendants do not deny, that plaintiff received 6 sets of collection letters from defendants, each set consisting of 4 letters, one for each loan.  Each of the 24 letters was unlawful for the reasons described above.  Plaintiff also alleges, and defendants do not deny, that the subject practices are employed with respect to other consumer debtors, potentially thousands of them.

Defendants' motion to dismiss first challenges the class claims which are based on violations of Massachusetts General Laws chapter 93A, section 2.   Defendants make two arguments:  (i) plaintiff's initial demand letter pursuant to G.L. c. 93A, section 9, was inadequate, and (ii) the FDCPA preempts rights and remedies available to consumers under chapter 93A.  The motion should be denied.  As a threshold matter, the motion is untimely, having been filed some 3 months after defendants answered the third amended complaint and formal discovery commenced.  Alternatively, the motion is utterly without

merit.  Plaintiff's demand letter was clearly sufficient as a matter of law; in any event, even a more detailed letter would not have made a difference since defendant made ***no*** response whatsoever within the 30-day statutory response period.  Moreover, defendant's preemption argument is frivolous, having been consistently rejected by the courts.

The motion to dismiss the claims against Paul W. Zwicker rests on a complete mischaracterization of the TAC.   Defendants state that plaintiff's claims are based solely on a *respondeat superior* theory, but in fact no such theory of liability appears in the TAC.  To the contrary, the TAC asserts liability against Paul W. Zwicker on the common law grounds that he negligently hired, trained, and supervised employees, and negligently failed to formulate and implement policies and procedures designed to avoid violating federal and state unfair debt collection laws.   Thus, in this respect as well, defendant's motion is completely without foundation.

**<u>Argument</u>**

**I.  THE "MOTION TO DISMISS" UNDER FED.R.CIV.P. 12(b)(6) IS
UNTIMELY, AS DEFENDANTS PREVIOUSLY ANSWERED THE THIRD
AMENDED COMPLAINT AND DISCOVERY HAS BEEN PROCEEDING.**

Federal Rule of Civil Procedure 12(b)(6) provides that a motion which raises one of the listed defenses "shall be made before pleading if a further pleading is permitted." Thus, a defendant who wishes to raise a 12(b)(6) defense by motion must do so before filing his answer.  The rule is clear:  "[i]f the defendant decides to assert a Rule 12(b) defense by motion, then he must do so before filing the answer."  5C A Wright & A. Miller, *Federal Practice and Procedure,* §1361.  Consequently, "the district judge must deny any Rule 12(b) motion made after a responsive pleading is interposed as being too late." *Id.  See,* e.g., *Mulhall v. District of Columbia,* 747 F.Supp. 15 (D.D.C. 1990), *aff'd* 946 F.2d 1565; *Xerox Corp. v. Apple Computer, Inc.,* 734 F.Supp. 1542 (C.D.Cal. 1990); *Paul v. McGhee,* 577 F.Supp. 460 (D.Tenn. 1983).

Accordingly, since defendants have answered the Third Amended Complaint and substantial time has passed, they have waived their right to move to dismiss under Rule 12(b)(6) and the instant motion must be denied as untimely.[2]

---

[2] Plaintiff recognizes that in certain circumstances courts have chosen to entertain untimely motions to dismiss, treating them as either motions for judgment on the pleadings or for summary judgment.   In the present case, however, defendants have made no such request.  Moreover, any such treatment of defendants' motion would be prejudicial to plaintiff, who has not sought to introduce matters beyond the pleadings in opposing the instant motion.

## **"Conditional" Arguments**

In the event the Court determines that it is proper to address the merits of defendants' motion, it should be denied for the following reasons:

## **II. PLAINTIFF'S PRE-SUIT DEMAND COMPLIED WITH MASSACHUSETTS GENERAL LAWS CHAPTER 93A, SECTION 9**.

On April 21, 2004, plaintiff served Zwicker P.C. with a 10-page demand for settlement pursuant to G.L. c. 93A, section 9.   A true copy of the demand letter is appended to the Third Amended Complaint as Exhibit G.   Defendants contend in broad conclusory language, literally without explanation and citing no case law, that the letter is somehow inadequate to support the claims asserted in Counts VII, IX and XI of the TAC. This position is utterly without foundation and must be rejected.

Section 9 of chapter 93A provides that at least 30 days before a claim under section 2 is filed in court, the claimant must send a demand letter to the potential defendant "identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered. . . . "   The purpose of the demand letter is:

> to give the defendants "an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied" and to enable them to make "a reasonable tender of settlement" in order to limit the recoverable damages.

*York v. Sullivan,* 369 Mass. 157, 162 (1975), quoting *Slaney v. Westwood Auto, Inc.,* 366 Mass. 688, 704-705 (1975).   Since the standard is one of "reasonableness," a demand letter which complies with section 9 "need not contain an encyclopedic description of the basis for liability or damages.  A plain and straightforward description of both is perfectly adequate." *Alfaro v. Capone,* 1994 WL 879472*3 (Mass.Super., Sept. 19, 1994).

Indeed, so long as the defendant is put on reasonable notice of the claim, it is not

necessary to specifically identify the basis of the section 2 violation.  *See,* e.g., *Cohen v.

Liberty Mutual Insurance Co.,* 41 Mass.App.Ct. 748, 756 (1996)(demand letter under

G.L. c. 93A, section 9 held sufficient even though it "did not specifically allege that

[defendant] violated" statute eventually sued on); *Piccuirro v Gaitenby*, 20 Mass.App.Ct.

286, 292 (1985)(demand letter ruled adequate even though it "was phrased in terms of

representations rather than conflict of interest," the ground eventually sued on).

With these principles in mind, defendants' specific arguments will now be

addressed in turn.

### A.  Count VII

Count VII of the TAC challenges Zwicker P.C.'s practice of sending collection

letters to consumer debtors which contained hidden attorney's fees in the balances

alleged to be due.  Such a practice clearly violates 15 U.S.C. §1692e(2), which provides

in relevant part as follows:

> A debt collector may not use any false, deceptive, or misleading
> misrepresentation or means in connection with the collection of
> any debt.  Without limiting the general application of the
> foregoing, the following conduct is a violation of this section:
>                    .    .    .    .
> (2) The false representation of –
>        (A) the character, amount, or legal status of any debt;

A debt collection regulation promulgated by the Attorney General of the Commonwealth

of Massachusetts is substantially similar:

> It shall constitute a deceptive act or practice to engage in any
> of the following practices:
>                    .    .    .    .
> (2) Any knowingly false or misleading representation in any

communication as to the character, extent or amount of the debt. . .

940 CMR 7.07.

Plaintiff's demand letter clearly alleged these violations with sufficient clarity and specificity to reasonably put Zwicker P.C. on notice of her claim under G.L. c. 93A, section 9, stating: (i) the 4 collection letters sent on February 11, 2003 "misrepresent[ed] . . . the amount owed on Plaintiff's loans;" (ii) the 4 collection letters sent on February 26, 2003 "each misrepresent[ed] . . . the amount of Feuerstein's student loans, each bearing no indication of any accounting or basis for how the amounts were calculated;" (iii) the letters sent on March 26, 2003 each "misrepresent[ed] . . . the amounts of her loans;" (iv) the 8 letters dated July 16, 2003 each "falsely represent[ed] . . . the amounts due on the loans;" and (v) the letters of March 1, 2004 "each falsely represented the . . . amounts due on each of the loans." The demand then goes on to allege that in sending the letters Zwicker P.C. violated 940 CMR 7.07 "by misrepresenting the character, extent, or amount of the debt," and further alleges that G.L. c. 93A, section 2, was violated because the letters ran afoul of the FDCPA, including 15 U.S.C. §1692e(2), "by falsely representing the character, amount, or legal status of the debts."

Consequently, there should be little doubt that the foregoing portions of plaintiff's demand letter, standing alone, "reasonably describe" Zwicker P.C.'s improper conduct of misrepresenting the character and amount of the debts by, *inter alia,* concealing attorney's fees. However, the letter did not stop there, noting also that Zwicker P.C. collectors emphasized in phone calls to the plaintiff that unspecified (and apparently arbitrary and excessive) attorneys' fees were being included in the amounts claimed to be

due on the loans, for example: (i) "we [Zwicker P.C.] are charging you $6,000 to keep this up; we'll do what we want" (statement of "Brian," February 19, 2003); and (ii) Feuerstein is "being charged $3,000 for calling and harassing them" (statement of "Brian," March 13, 2003).   Moreover, the demand makes plain that from the very outset of Zwicker P.C.'s collection activity, plaintiff questioned the accuracy and nature of the balances claimed to be owed, for example:  (i) "[d]espite the frequent oral and written repeated requests made . . . for an accounting of the four loans and alleged amounts due under the Notes, your office has ever [sic] provided same;" and (ii) "[o]n multiple occasions from the end of December 2002 to date . . . [plaintiff] requested documentation – such as a payment record or account history – to support the claims so that any problems could be  addressed and, if necessary, corrected.  Your office consistently refused and never provided any of the requested documentation."

        Defendant's contention that the letter somehow is not adequate is belied by its own, albeit belated, response.[3]  Nowhere does the response indicate that defendant was uncertain or confused about the substance of any of plaintiff's allegations.  Nowhere does it indicate that plaintiff had presented inadequate, incomplete, or inaccurate information.  Indeed, to the contrary, the response states that as a result of plaintiff's letter defendant undertook "a substantial investigation," which included "obtaining and reviewing historical records regarding Ms. Feuerstein's accounts and the debts which we believe she owes, and reviewing the applicable law including state and federal statutes, regulations and case law."   The "substantial investigation" resulted in defendant

_____

[3] Defendant's response to the demand letter is attached to the TAC as Exhibit I.

concluding that the balances were accurate and the letters were otherwise lawful;[4] nonetheless, defendant obviously saw sufficient merit in plaintiff's allegations to warrant a tender of settlement in the amount of $2,500.   Accordingly, it cannot be doubted that the demand letter "gave the defendant an opportunity to review the facts and the law, to see if he ought to give relief, and to make a reasonable offer of settlement." *Cassano v. Gogos,* 20 Mass.App.Ct. 348, 350 (1985).   For defendant to now protest that they "were never given an opportunity to make a reasonable offer of settlement" with respect to plaintiff's claim (Memorandum, p. 5) is disingenuous and, quite simply, preposterous.

### B.  Count IX

Count IX of the TAC asserts that Zwicker P.C. engaged in unfair and/or deceptive conduct by assessing and attempting to collect attorney's fees from Ms. Feuerstein and other consumer debtors in violation of a number of federal and state debt collection laws, specifically: (i) 15 U.S.C. §1692e(2)(B), which prohibits misrepresenting the compensation which a debt collector may lawfully receive; (ii) 15 U.S.C. §1692f(1), which prohibits the collection of fees not expressly authorized by the agreement creating the debt or permitted by law; and (iii) 940 CMR 7.07, which prohibits misrepresenting that a debt can be increased by attorney's fees which may not be legally added to the obligation.   Again, plaintiff's demand letter was more than adequate to put defendant on notice of these claims.   The letter asserted directly that defendant "refused and failed to provide any of the requested documentation so [it] could 'pad' legal fees by continuing to pursue collection activity and litigation against [plaintiff]."   It also cited the above-

---

[4] Defendant stated:  "it is our position that the balances set forth in the letters were accurate and that the content of the letters was otherwise appropriate."

described statutory violations with specificity and directly tied them to defendant's conduct, stating: (i) "the above actions also violated [940 CMR 7.07] . . . by misrepresenting that the debt could be increased by attorney's fees and collection costs;" and (ii) "[y]our actions have violated . . . 15 U.S.C. §1692e(2)(B) and section 1692f(1) by falsely representing the compensation which may be lawfully received by you for the collection of the debt and attempting to collect same from Feuerstein."   And, as demonstrated above, defendant clearly understood the gist of plaintiff's claim:  it undertook a "substantial investigation" of the claim, raised no questions regarding the specificity or nature of plaintiff's allegations, and concluded that it had acted properly in all respects, including the manner in which it had determined and communicated the alleged balances due.  Thus, the demand letter as to Count IX was clearly adequate.

    **C.  Count XI**

In Count XI of the TAC, plaintiff asserts that the form collection letters which Zwicker P.C. sent to plaintiff were misleading and deceptive with respect to the degree of attorney involvement, thus violating G.L. c. 93A, section 2.   Moreover, the FDCPA specifically prohibits a debt collector from falsely representing that a communication is from an attorney, or using any deceptive means to attempt to collect a debt, 15 U.S.C. §1692e(3), (10), and any such conduct is considered a per se violation of G.L. c. 93A, section 2.  *See* 940 CMR 3.16(4).   The TAC points out that the letters in question are on Zwicker P.C. letterhead and bear the signatures of Zwicker P.C. attorneys – thus implying that they were, in fact, written and/or ordered by the attorneys – yet the bodies of the letters imply the opposite by stating that an actual review of plaintiff's account has

not yet taken place.  It also points out that a substantial portion of the second page of the letters which purports to explain the degree and nature of attorney involvement is not just deceptive, but utterly incomprehensible.  TAC, 101-102 (incorporated by reference into Count XI).

Plaintiff's demand letter reasonably described the problem with the dunning letters and tied defendant's misconduct to the relevant statutes.  For example, it stated with respect to the February 26, 2003 letters that they were "computer generated form letters containing canned paragraphs routinely utilized by your office.  Neither the letters nor Feuerstein's file was actually reviewed by Tessimond prior to same being mailed to Feuerstein."  It went on to allege that Zwicker P.C.  violated 15 U.S.C. §1692e(3) and (10) "by forwarding correspondence to Feuerstein which suggested it was from an attorney when, upon information and belief, no attorney actually reviewed Feuerstein's file or records related to any of the four loans, or the correspondence itself, prior to sending the correspondence," thus also running afoul of G.L. c. 93A, section 2.   The adequacy of the demand letter is further shown by defendants' own response, which acknowledged that the demand was sufficient for defendants to conduct a "substantial investigation" – allowing them to conclude that "the content of the letters was  . . . appropriate" - and then declared: "it is our position that before each letter was sent, an appropriate review of the account was conducted by an attorney of the firm."   In sum, for defendants to now assert that plaintiff's demand was somehow lacking, or that they were somehow hampered in tendering an offer of settlement, reflects a deliberate indifference to the facts or a disrespect for this Court, or both.

### III.  EVEN ASSUMING *ARGUENDO* THAT THE DEMAND LETTER WAS INADEQUATE, DEFENDANT WOULD NOT HAVE MADE A DIFFERENT, OR REASONABLE, SETTLEMENT OFFER.

Defendants argue that they were prejudiced by the alleged insufficiency of the demand letter because they "were never given an opportunity to make a reasonable offer of settlement on those claims." Memorandum, p. 5.   This is belied by defendants' own conduct.   It is undisputed that defendants prepared a response to the demand letter which included a settlement proposal, but that the response was not tendered until *after* the expiration of the 30-day response period provided by G.L. c. 93A, section 9.   *See* Exhibit I to TAC; Answer to TAC, ¶54.   The 30-day response period is critical to the dispute resolution mechanism of G.L. c. 93A: a defendant who tenders a timely settlement offer may, in subsequent litigation, file the written tender with the court "and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner." G.L. c. 93A, §9(3).   Here, however, because defendants' response was tardy, this option of attempting to limit plaintiff's recovery was foreclosed.   While defendants now complain that they "were never given an opportunity to make a reasonable offer of settlement on those claims," the reality is that they had a full 30 days to do so as provided by statute, but squandered the opportunity.   Furthermore, defendants have placed no information before the Court which even suggests that any "improvements" in plaintiff's demand letter would have caused them to tender their settlement proposal in a timely fashion (as opposed to causing them to make a more realistic offer).   It is self-evident that defendants are simply

attempting to shift the responsibility to plaintiff for their failure to make a timely

response to the demand letter, a tactic the Court should categorically reject.

Accordingly, for all the above reasons, there is no basis for dismissing any count

of the TAC due to the alleged insufficiency of plaintiff's demand letter.

## IV.   FEDERAL LAW DOES NOT PREEMPT PLAINTIFF'S CLASS CLAIMS UNDER G.L. c. 93A OR ANY REMEDIES AVAILABLE THEREUNDER.

Defendants' contention that FDCPA preempts substantive causes of action and/or

remedies available under G.L. c. 93A is completely misguided.  The one case on which

defendants rely has been overruled, and the clear weight of authority holds that the

FDCPA does not preempt state consumer protection laws which apply to debt collection

activities.

Federal preemption is a strongly disfavored doctrine:

> [p]reemption of state law by federal statute or regulation is not
> favored in the absence of persuasive reasons either that the
> nature of the regulated subject matter permits no other con-
> clusion, or that Congress has unmistakably so ordained.

*Chicago & N.W. Tr. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317 (1981).   Even if

this were not the case, however, the FDCPA itself reflects a specific Congressional intent

not to preempt state laws which provide greater remedies or protections than under the

federal scheme:

> This title does not annul, alter, or affect, or exempt any
> person subject to the provisions of this title from complying
> with the laws of any State with respect to debt collection
> practices, except to the extent that those laws are incon-
> sistent with any provision of this title, and then only to
> the extent of inconsistency.  *For purposes of this section,
> a State law is not inconsistent with this title if the pro-*

> *tection such law affords any consumer is greater than*
> *the protection provided by this title.*

15 U.S.C. §1692n (emphasis added).

Thus, in *Hage v. General Service Bureau,* 2002 WL 1796575 (D.Neb., Aug. 5, 2002), plaintiff filed a putative class action under FDCPA and the Nebraska Consumer Protection Act arising out of various collection practices employed by defendant in attempting to collect unpaid medical bills. Defendants claimed that the Nebraska law conflicted with FDCPA, and therefore was preempted, because it contained a mechanism for the court to increase actual damages awarded, and carried a 4-year statute of limitations. Rejecting this position, the Court found that - like G.L. c. 93A - the Nebraska statute "expands plaintiffs' consumer rights, and there has been no showing that [it] is inconsistent with the FDCPA." *Id.* at *2. Similarly, in *Irvin v. Mascott,* 96 F.Supp.2d 968 (N.D.Cal. 1999), plaintiffs brought a class action challenge to defendants' conduct in attempting to collect on dishonored checks. The Court ruled that a claim under the California Unfair Business Practices Act was not preempted by FDCPA even though it "may provide for greater protection" in the form of injunctive relief and a 4-year statute of limitations. And, in *Albright v. Allied Int'l Credit Corp.,* 2003 WL 22350928 (C.D. Cal. Aug 25, 2003), defendant argued – as do defendants here – that "plaintiff's state law claims are in conflict with the limits of recovery set forth in FDCPA" and thus "must be dismissed by reason of the doctrine of conflict or field preemption." *Id.* at *1. After noting that the single case on which defendants rely here – *Threasher v. Cardholder Svcs.,* 74 F.Supp.2d 691 (S.D. Miss. 1999) – "has been overruled," the court stated that "[c]ases are legion that the FDCPA does not completely

preempt state law" and denied the motion to dismiss. *Id.* at *1.[5]  *See*, also, *Albanese v. Portnoff Law Assoc., Ltd.,* 301 F.Supp.2d 389 (E.D.Pa. 2004).

## V.  THERE IS NO BASIS FOR DISMISSING ANY OF THE CLAIMS ASSERTED AGAINST PAUL W. ZWICKER.

Lastly, defendants argue that the claims asserted against Paul W. Zwicker should be dismissed because "plaintiff has not alleged that Paul Zwicker was personally involved in the collection of a debt."   Defendants state that the claims against Paul Zwicker are based merely on the fact that he is "the President and sole shareholder of Zwicker & Associates, P.C."  Memorandum, pp. 12-13.  These contentions reveal an ignorance, intentional or otherwise, of the allegations of the Third Amended Complaint, which reads in pertinent part:

> 34.  The unlawful conduct of defendants Widronik a/k/a "Woods," Coyle, Tessimond, Thompson, and Zwicker P.C. as set forth above, and the resulting harm suffered by plaintiff, were directly and proximately caused by the negligence of Zwicker in failing to use reasonable care in hiring, training, and supervising employees of Zwicker P.C. with respect to debt collection activities, and the negligence of Zwicker in failing to use reasonable care in formulating and implementing policies and procedures designed to avoid violating the rights of debtors and alleged debtors, such as the plaintiff herein.

TAC, ¶34.  Thus, contrary to defendants' unsupported assertions, the claims against Zwicker are based on well-recognized common law causes of action for negligent hiring,

---

[5] Faced with this daunting reality, defendants attempt to circumvent precedent and common sense by categorizing plaintiff's chapter 93A claims as being based solely on FDCPA violations, to wit:  "if conduct violates the FDCPA, it also violates M.G.L. c. 93A, s. 2.  One equals the other.  That is to say, there is no greater protection."  This is an overly narrow, indeed contorted, view of the TAC, which asserts clearly that the chapter 93A claims rest on a number of underlying concepts, including basic definitions of unfairness and deception, and violations of specific state regulations.

training and supervision.  *See*, e.g., *Orr v. Edwards,* 62 Mass.App.Ct. 475 (2004) (negligent hiring was "long ago recognized as a good theory of liability" that has been "applied extensively in recent years," and distinguishing same from the *respondeat superior* doctrine); *Doe v. Harbor Schools, Inc.,* 63 Mass.App.Ct. 337 (2005)(negligent training and supervision); *Ku v. Town of Framingham,* 63 Mass.App.Ct. 271 (negligent supervision).   There is absolutely no basis for dismissing these claims.

## Conclusion

For the above reasons, defendants' motion to dismiss certain counts of the Third Amended Complaint must be denied in its entirety.

/s/ Kenneth D. Quat
BBO 408640
9 Damonmill Square, Suite 4A-4
Concord MA 01742
978-369-0848
ken@quatlaw.com

## Certificate of Service

I hereby certify that a copy of the foregoing has been served via first class mail, postage prepaid, on the date below to:  Robert W. Thuotte, Esq., Zwicker & Assoc., P.C., 800 Federal St., Andover MA 01810.

/s/Kenneth D. Quat

Date: 12/23/05